FIFTH DIVISION
October 20, 2006

No. 1-05-1629

| | | |
|---|---|---|
| VIVIAN HOFFELT, | ) | |
| | ) | |
| Petitioner-Appellant, | ) | |
| | ) | |
| v. | ) | Petition for Review of the |
| | ) | Order of the Illinois |
| THE ILLINOIS DEPARTMENT OF HUMAN RIGHTS, | ) | Department of Human Rights |
| CHIEF LEGAL COUNSEL OF THE ILLINOIS | ) | |
| DEPARTMENT OF HUMAN RIGHTS, and the CITY OF | ) | |
| CHICAGO AVIATION DEPARTMENT, | ) | |
| | ) | |
| Respondents-Appellees. | ) | |

### MODIFIED OPINION UPON DENIAL OF REHEARING

JUSTICE GALLAGHER delivered the opinion of the court:

On April 25, 2005, the Illinois Department of Human Rights (the Department), through its chief legal counsel issued a final appealable order pursuant to the Illinois Human Rights Act. 775 ILCS 5/8-111(A) (West 2004). Petitioner, Vivian Hoffelt, now seeks review and reversal of that order which dismissed her charges of sex discrimination and unlawful retaliation for having complained of sexual harassment.

Petitioner began work with the City of Chicago (the City), in July 1988 as an aviation security officer at O'Hare International Airport. Beginning in late 1999, her superior officer, Sgt.

Christopher Disandro, allegedly began a pattern of inappropriate conduct toward her.[1] On one occasion in late 2001, Disandro, referring to petitioner and another female officer, said, "I would love to have one on the face and one on the crotch." After this statement, petitioner told Disandro to leave her alone. Allegedly, Disandro began retaliation toward petitioner that negatively affected her treatment on the job and caused her to fear for her personal safety. When Disandro was suspended in August 2002 for violating the City's residency requirement, he became furious with petitioner because he suspected that she had "dropped a dime" on him. He allegedly threatened that he "knew people from the old neighborhood" and that he could have her "dropped" and that he knew people who were getting released from prison soon.

On May 1, 2003, petitioner filed a six-count charge against the City, alleging that she had been subjected to various forms of discrimination from early November 2002 until the date of filing. Each and every count alleged that she had been harassed or discriminated against by Lt. Zanders.

Count I alleged harassment from early November 2002 and continuing until the present (May 1, 2003) due to her sex, female. In this count, petitioner alleged that Lt. Zanders harassed

---

[1] Petitioner has detailed the specific acts which comprise three pages of her brief. We need not include them here, because the City does not dispute that Hoffelt filed an internal complaint in August 2002 about Disandro.

her by referring to her and other females as "incompetents," "bottom feeders," and "inept." She further alleged that he claimed male employees wrote better reports, talked to her in a demeaning manner, and yelled at her, creating a hostile work environment.

Count II also alleged harassment from early November 2002 and continuing until the present (May 1, 2003). Count II alleged that the harassment was in retaliation for petitioner's opposing unlawful discrimination. In this count, petitioner alleged that she was harassed by Lt. Zanders, who condoned Disandro's sexual harassment of her and another employee, and again alleged that Lt. Zanders harassed her by referring to her and other females as "incompetents," "bottom feeders," and "inept," claiming that male employees wrote better reports, talking to her in a demeaning manner, and yelling at her, creating a hostile work environment. Petitioner also alleged that Lt. Zanders harassed her after she opposed unlawful discrimination (Disandro's alleged sexual harassment), thereby raising an inference of retaliatory motivation.

Count III alleged unequal terms and conditions of employment, during the same time period contained in counts I and II, due to her sex, female. She alleged that Lt. Zanders continually gave her less desirable assignments and on several occasions had denied her holiday and compensatory time pay, although it had been previously approved and/or she had documentation to justify it, forcing her to submit additional information and documents before the situation was corrected.

Count IV alleged unequal terms and conditions of employment, during the same time period contained in counts I, II, and III and repeated the same allegations as count III. The basis of count IV, however, was retaliatory motive for petitioner's opposing unlawful discrimination,

1-05-1629

namely, Disandro's alleged sexual harassment.

Counts V and VI each alleged inaccurate performance evaluation in January 2003. Count V was based upon her sex, female. Count VI alleged retaliation for opposing unlawful discrimination.

On October 15, 2004, the Department dismissed petitioner's charge for lack of substantial evidence. On April 25, 2005, the chief legal counsel upheld the dismissal for lack of substantial evidence.

STANDARD OF REVIEW

The decision of the chief legal counsel to sustain dismissal of a charge should be upheld unless the decision was "arbitrary, capricious, or an abuse of discretion." *Gusciara v. Lustig*, 346 Ill. App. 3d 1012, 1017, 806 N.E.2d 746, 750 (2004). Agency action is arbitrary and capricious when the agency contravenes the legislature's intent, fails to consider a crucial aspect of the problem, or offers an implausible explanation contrary to agency expertise. *Allen v. Lieberman*, 359 Ill. App. 3d 1170, 1177, 836 N.E.2d 64, 69 (2005). Substantial evidence is defined as "evidence which a reasonable mind accepts as sufficient to support a particular conclusion and which consists of more than a mere scintilla but may be somewhat less than a preponderance." 775 ILCS 5/7A-102(D)(2) (West 2004); see *Stone v. Department of Human Rights*, 299 Ill. App. 3d 306, 314, 700 N.E.2d 1105, 1111 (1998). Substantial evidence has also been said to be "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Stone*, 299 Ill. App. 3d at 315, 700 N.E.2d at 1111. For the following reasons, we affirm the chief legal counsel's decision to sustain the Department's dismissal of counts I, III, and V, which were based

4

on sex discrimination. However, we conclude that the chief legal counsel abused his discretion in finding a lack of substantial evidence regarding petitioner's claims of retaliation based upon her opposing unlawful discrimination, namely, Disandro's alleged sexual harassment.

ANALYSIS

Petitioner's claims, although somewhat intertwined, include charges of discrimination based on her sex (*i.e.*, her gender-based status), as well as charges of retaliation based on her opposition to Disandro's alleged sexual harassment (*i.e.*, her conduct). We shall first address petitioner's sex discrimination charges.

Sex Discrimination Claim

In analyzing employment discrimination actions brought under the Human Rights Act, the Commission and the Illinois Supreme Court have adopted the analytical framework set forth by the United States Supreme Court in its decisions addressing claims brought under Title VII of the Civil Rights Act of 1964 (42 U.S.C. § 2000e *et seq*. (1982)). *Zaderaka v. Illinois Human Rights Comm'n,* 131 Ill. 2d 172, 178, 545 N.E.2d 684, 687 (1989). A person can establish discrimination through either the direct method that an adverse employment action was taken for unlawful discriminatory reasons or through the indirect method pursuant to *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 36 L. Ed. 668, 93 S. Ct. 1817 (1973), adopted by the Illinois Supreme Court in *Zaderaka*, 131 Ill. 2d 172, 178-79, 545 N.E.2d 684, 687.

To establish a *prima facie* case of discrimination in accordance with the analysis set out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), a complainant must demonstrate that (1) she engaged in a protected activity that was known by the respondent; (2) the respondent

subsequently took some adverse action against the complainant; and (3) there is a causal connection between the protected activity and the disadvantageous employment action . *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Because petitioner failed to show that the City committed a material adverse act against her, she failed to sufficiently demonstrate the second element, and thus, failed to establish a *prima facie* case of sex discrimination.

Respondents assert that "not everything that makes an employee unhappy is an actionable adverse action." *Smart v. Ball State University*, 89 F.3d 437, 441 (7th Cir. 1996). They note that whether petitioner proceeds by the direct or indirect method of proof, she must show a materially adverse employment action. *Rhodes v. Illinois Department of Transportation*, 359 F. 3d 498, 504 (7th Cir. 2004). In other words, she must show that " 'material harm has resulted from ... the challenged actions.' [Citations.]" *Traylor v. Brown*, 295 F.3d 783, 788 (7th Cir. 2002).

In order to be considered materially adverse enough to constitute discrimination, an employment action must constitute a " 'severe or pervasive' change in the daily 'conditions' of employment * * * [Citations.]" *Washington v. Illinois Department of Revenue*, 420 F.3d 658, 661 (7th Cir. 2005). As the court in *Traylor* explained, an adverse employment action had been defined by that court as " 'more disruptive than a mere inconvenience or an alteration of job responsibilities. A materially adverse change might be indicated by a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices that might be unique to a particular situation.' [Citation.] "*Traylor*, 295 F.3d at 788. We conclude that petitioner did not suffer a materially adverse employment action sufficient to support her

charges of discrimination based on sex. Counts I, III and V allege that petitioner was harassed, subjected to unequal terms and conditions of employment, and given an inaccurate performance evaluation, and that all of these actions were based upon her sex. Those allegations, taken as true, do not establish a severe or pervasive change in the daily conditions of employment. Thus, the chief legal counsel did not abuse his discretion in finding a lack of substantial evidence to support petitioner's charges of discrimination based on sex. We conclude that the chief legal counsel correctly upheld the Department's dismissal of counts I, III, and V.

Retaliation Claim

In order to establish a *prima facie* case of retaliation under the Human Rights Act, petitioner must show that: (1) she was engaged in a protected activity; (2) her employer committed a material adverse act against her; and (3) a causal nexus existed between the protected activity and the adverse act. *Stone v Department of Human Rights*, 299 Ill. App. 3d 306, 316, 700 N.E.2d 1105, 1112 (1998); *Carter Coal Co. v. Human Rights Comm'n*, 261 Ill. App. 3d 1, 633 N.E.2d 202 (1994). We conclude that petitioner has established a *prima facie* case of retaliation and the chief legal counsel erred in sustaining the Department's finding of a lack of substantial evidence. We specifically reject respondents' argument that the City did not commit a material adverse act against her *with respect to her retaliation claim*. As we shall explain below, in light of *White*, with respect to petitioner's retaliation claims, she sufficiently demonstrated the second element, that the City committed a material adverse act against her.

In determining whether an employer's alleged retaliation constituted an actionable adverse act, the Illinois Human Rights Commission has considered analogous federal cases

arising under Title VII of the Civil Rights Act of 1964 (42 U.S.C. §2000e *et seq.*(1982)). See, *e.g.*, *In re Papa*, Ill. Hum. Rts. Comm'n Rep. 1997SF0146 (June 9, 2000). The United States Supreme Court had noted, with respect to Title VII's anti-discrimination provision requirements, that a broad array of actions may constitute an adverse employment action including such employer acts as "hiring, firing, failing to promote, reassignment with significantly different responsibilities, or some other action causing a significant change in benefits." *Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742, 761, 141 L. Ed. 2d 633, 653, 118 S. Ct. 2257, 2268-69 (1998). More recently, however, the United States Supreme Court discussed the degree of material adversity that must be alleged in a Title VII retaliation claim. *Burlington Northern & Santa Fe Ry. Co. v. White*, ___ U.S. ___, 165 L. Ed. 2d 345, 126 S. Ct. 2405 (2006). As the *White* court noted, *Ellerth* did not even mention Title VII's antiretaliation provision (*White*, ___ U.S. at ___, 165 L. Ed. 2d at ___ , 126 S. Ct. at 2413), and declined to extend *Elleth's* holding. The *White* Court distinguished Title VII's antidiscrimination provision from its antiretaliation provision. See also *Washington v. Illinois Department of Revenue*, 420 F.3d 658, 660 (7th Cir. 2005) (noting that "[Title VII's antiretaliation provision] is 'broader' than [its antidiscrimination provision] in the sense that retaliation may take so many forms, while [the antidiscrimination provision] is limited to discrimination 'with respect to [the worker's] compensation, terms, conditions, or privileges of employment' " ).

The *White* Court acknowledged that "the anti-retaliation provision protects an individual not from all retaliation, but from retaliation that produces an injury or harm." *White*, ___U.S. at ___, 165 L. Ed. 2d at ___, 126 S. Ct. at 2414. The *White* opinion then characterized "how

1-05-1629

harmful an act of retaliatory discrimination must be in order to fall within [Title VII's antiretaliation] provision's scope." *White*, ___U.S. at ___, 165 L. Ed. 2d at ___, 126 S. Ct. at 2411.

In describing the level of seriousness to which the retaliation must rise in order to be actionable, the *White* Court noted the courts of appeals had used differing language and agreed with the formulation set forth by the Seventh Circuit and the District of Columbia. See *Washington v. Illinois Department of Revenue*, 420 F.3d 658, 662 (7th Cir. 2005); *Rochon v. Gonzales*, 438 F.3d 1211, 1217-18 (D.C. Cir. 2006). The Court decided that a retaliation plaintiff must show "a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge[2] of discrimination." *White*, ___U.S. at ___, 165 L. Ed. 2d at ___, 126 S. Ct. at 2415; see also *Washington v. Illinois Department of Revenue*, 420 F.3d 658, 662 (7th Cir. 2005) (same).

As the *White* Court explained, the reason it addressed *materiality* of the adverse employment action was to separate "significant from trivial harms," such as petty slights or minor annoyances. *White*, ___U.S. at ___, 165 L. Ed. 2d at ___, 126 S. Ct. at 2415. The Court referred to a *reasonable* employee's reactions because the provision's standard for judging harm must be an objective standard. *White*, ___U.S. at ___, 165 L. Ed. 2d at ___, 126 S. Ct. at 2415. An objective standard was noted to be judicially administrable in that "[i]t avoids the

---

[2]In *White*, similar to the instant case, no "formal charge" had been previously filed, but there was an internal complaint.

9

uncertainties and unfair discrepancies that can plague a judicial effort to determine a plaintiff's unusual subjective feelings." *White*, ___U.S. at ___, 165 L. Ed. 2d at ___, 126 S. Ct. at 2415.

As noted, this was the standard previously applied by the Seventh Circuit in *Washington*. The *Washington* court, noting that a change in hours normally would not be material, decided that where an employee had sought and been approved for flex-time in order to care for her son who had Down's syndrome, the removal of her flex-time schedule, by way of abolishing her position and requiring her to start a newly created position, could potentially constitute a material change to her working conditions that was actionable under the antiretaliation provision of Title VII. *Washington*, 420 F.3d at 662. See also *Balderrama v. Kraft Foods North America, Inc.*, 307 F. Supp. 2d 1012, 1014 (N.D. Ill. 2004) (In the retaliation setting, the standard for determining whether an employer's act constitutes an adverse employment action has been determined to be less demanding.)

With respect to the materiality requirement, the *Washington* court opined that potentially "an act that would be immaterial in some situations is material in others." *Washington*, 420 F.3d at 661.  The court gave the following example:

"Suppose an employer knows that a particular worker has a nervous condition or hearing problem that makes him miserable when exposed to music for extended periods. Many people find music soothing and welcome its addition to the workplace. But if an employer sought to retaliate for a charge of discrimination by exploiting this vulnerability, moving him from a quiet office to one where Muzak plays constantly, that could be a material change if not, indeed,

a constructive discharge ***." *Washington*, 420 F.3d at 662. The *White* Court also declared that "the significance of any given act of retaliation will often depend upon the particular circumstances." *White*, ___U.S. at ___, 165 L. Ed. 2d at ___, 126 S. Ct. at 2415. The *White* Court gave the following example: "A schedule change in an employee's work schedule may make little difference to many workers, but may matter enormously to a young mother with school age children." *White*, ___U.S. at ___, 165 L. Ed. 2d at ___, 126 S. Ct. at 2415.

In support of her claims of retaliation for opposing Disandro's alleged sexual harassment, petitioner has alleged that she suffered a harm in that she was harassed by Lt. Zanders, who condoned Disandro's sexual harassment of her and another employee, and who referred to her, and other females, as "incompetent," "bottom feeders," and "inept," talked to her in a demeaning manner, and yelled at her, creating a hostile environment.

In further support of her retaliation claims, she claims that she was assigned more often to a post considered to be a less desirable assignment. This assignment was even acknowledged by three witnesses, *i.e.*, three other officers, to be "a punishment post." There was evidence from Officers Weidel, Velasquez and Dancy. All three attested to the fact that those post assignments, which consist exclusively of sitting at an entrance gate and "swiping in" vehicles, as opposed to patrol duties throughout the airport grounds, are commonly known by officers as punishment assignments. Respondents downplay the significance of petitioner's claim that she was assigned to posts 1 and 2 - posts described by three witnesses as "punishment posts" - more often than men and more often than anyone who did not complain about sexual harassment.

Respondents are incorrect about the significance of Lt. Zanders' assignment decisions, in the retaliation setting. As the Commission has explained:

"In every workplace there are job duties which are considered undesirable. If an employer, with impunity, could assign employees who protest unlawful discrimination to undesirable tasks, very few individuals would protest against unlawful discrimination. Just as some people might prefer to work the overnight shift, it is likely that a few sergeants would prefer to work behind a desk instead of on patrol. Nevertheless, where assignments are generally seen as undesirable, the employer should not be able to use the fact that a few people might enjoy the assignment to avoid liability for having retaliated against an employee." *In re Papa*, Ill. Hum. Rts. Comm'n Rep.1997SF0146, slip op. at 9 ( (June 9, 2000).

Additionally, petitioner alleged that her compensatory time off requests were denied where they had been granted before and, finally, that she was given a lowered performance rating. With respect to charges of retaliation, the Illinois Human Rights Commission has recognized actionable adverse employment actions based upon claims of undesirable job assignments and lateral transfers and this court has agreed. See *In re Papa*, Ill. Hum. Rts. Comm'n Rep. 1997SF0146 (June 9, 2000); *All Purpose Nursing Service v. Illinois Human Rights Comm'n*, 205 Ill. App. 3d 816, 828, 563 N.E.2d 844 (1990). We conclude that petitioner has met her burden of showing substantial evidence of an adverse employment action under her retaliation claim. She has sufficiently alleged employment actions that "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *White*,

1-05-1629

___U.S. at ___, 165 L. Ed. 2d at ___, 126 S. Ct. at 2415.

In the hearing before the Department, it concluded that there were certain uncontested facts. Based upon the uncontested evidence, petitioner has also established the other two elements of a *prima facie* case for retaliation. She has established the first element, namely, that she was engaged in a protected activity. It was uncontested that petitioner filed an internal complaint about Disandro's harassment in August 2002 with Lt. LeRoy Pestka and Juan Rodriguez, personnel department officer.

Petitioner has also demonstrated that a causal nexus existed between the protected activity and the adverse act. In the hearing before the Department, it was uncontested that Lt. Zanders was aware of petitioner's complaint against Disandro. As noted earlier, when Disandro was suspended in August 2002 for violating the City's residency requirement, he became furious with petitioner because he suspected that she had "dropped a dime" on him. He allegedly threatened that he "knew people from the old neighborhood" and that he could have her "dropped," and that he knew people who were getting released from prison soon. It was uncontested during the Department's hearing that, during this time, petitioner indicated that Disandro retaliated against her for opposing his sexual advances and she was advised to file a police report against Disandro and to file a formal complaint with the City's sexual harassment office. The Department found that it was uncontested that, in September 2002, Disandro was terminated from his employment. Petitioner disputes this fact and asserts that Disandro remained on administrative leave and that he continued to show up at the workplace and was assisted by Lt. Zanders in gaining unauthorized access to the restricted area of the workplace.

13

Petitioner contends that Lt. Zanders openly expressed his hostility toward her based upon his comments in reaction to her complaints about Disandro's conduct, bluntly telling her "I do not care what you've got." In addition to these acts, Lt. Zanders allegedly engaged in all of the other acts in petitioner's charge that constituted the material adverse employment actions, in retaliation for her opposing the harassment by Disandro.

Moreover, temporal proximity between a protected activity and an adverse action has been considered. A *prima facie* case of retaliatory discharge can be established by showing a short time span between the filing of a discrimination charge and the employer's adverse action. See, e.g, *Maye v. Human Rights Com'n,* 224 Ill. App. 3d 353, 362, 586 N.E.2d 550, 556 (1991)(and cases cited therein). Because petitioner established a *prima facie* case of retaliation, she created a rebuttable presumption of unlawful retaliation by the City. Petitioner, however, contends that, in making the threshold determination of a lack of evidence, the Department strayed radically from its proper role within the Illinois statutory scheme under the Illinois Human Rights Act (775 ILCS 5/1-101 *et seq*. (West 2002)) and functioned more like an adjudicative body than an investigative body. We conclude that the chief legal counsel's decision to uphold the Department's dismissal of counts II, IV, and VI must be reversed and this cause remanded for further investigation.

Because we are remanding this matter, it is important to note that we disagree with respondents' position that the Department correctly refused to consider Disandro's alleged sexual harassment of petitioner because her "charge" did not allege sexual harassment and that, therefore, this court has no jurisdiction to consider the acts of sexual harassment committed by

14

Disandro.  We agree with petitioner that pursuant to the *Morgan* doctrine, the entire pattern of harassment should have been considered. See *National RR Passenger Corp. v. Morgan*, 536 U.S. 101, 153 L. Ed. 2d 106, 122 S. Ct. 2061 (2002).  Petitioner's complaint clearly alleged that Lt. Zanders' harassment was in retaliation for her prior opposition to the alleged sexual harassment by Disandro.

Petitioner also notes that she has direct evidence of Lt. Zanders' openly announced sexual bias based upon his comments that women are "bottom feeders," "inept," and "incompetent," and his view that women, as a class, cannot write police reports as well as men, as a class.  As noted earlier, petitioner further contends that Lt. Zanders openly expressed his hostility toward her based upon his comments in reaction to her complaints about Disandro's conduct, bluntly telling her "I do not care what you've got."

In *Morgan*, the Court explained that a " hostile work environment" results from the "cumulative effect of individual acts." *Morgan*, 536 U.S. at 115, 153 L. Ed. 2d at 123, 122 S. Ct. at 2073.  Thus, these acts "collectively constitute one 'unlawful employment practice.' " *Morgan*, 536 U.S. at 117, 153 L. Ed. 2d at 124, 122 S. Ct. at 2074, quoting 42 U.S.C. § 2000e-5(e)(1) (1994).  The *Morgan* Court held that even acts that occurred outside the statute of limitations period could be considered. *Morgan*, 536 U.S. at 117, 153 L. Ed. 2d at 125, 122 S. Ct. at 2075.

Although the *Morgan* case involved a statute of limitations defense, the reasoning applies here.  All of the incidents comprising a hostile work environment are part of one unlawful employment practice, and the City may be liable for all acts that are part of this single claim.  As this court recognized in *Gusciara v. Lustig*, 346 Ill. App. 3d 1012,  806 N.E.2d 746 (2004),

15

however, the *Morgan* Court qualified its holding by "specifying that an act that occurs within the prescribed period will not enable an employee to recover for acts occurring outside the period if the later act 'had no relation to the [earlier] acts' or if, 'for some other reason, such as certain intervening action[3] by the employer,' the more recent act was 'no longer part of the same hostile environment claim.' "*Gusciara v. Lustig*, 346 Ill. App. 3d at 1019, 806 N.E.2d at 751, quoting *Morgan*, 536 U.S. at 118, 153 L. Ed. 2d at 125, 122 S. Ct. at 2075.

Petitioner has alleged that the claims were related. In counts II, IV and VI of her six-count discrimination charge, petitioner alleged that the harassing conduct of Lt. Zanders was in retaliation for her opposition to unlawful discrimination by complaining to Lt. Zanders and others at the City about Disandro's sexual harassment; sexual harassment which petitioner further alleged was condoned by Lt. Zanders. Thus, similar to *Morgan* and *Gusciara*, the instant case involves one unlawful employment practice and Lt. Zanders' actions, if proved, constitute a part of the same hostile work environment as the alleged prior sexual harassment allegations against Disandro, as well as Disandro's alleged threatening conduct since his return, all of which arguably result in an intimidating, hostile, or offensive working environment. (see 775 ILCS 5/2-101(E) (West 2004)).

For the foregoing reasons, we affirm the chief legal counsel's decision affirming the

---

[3]Although there was intervening action by the City when Disandro was suspended for violating residency requirements, there was no intervening action on the part of the City with respect to petitioner's hostile environment claim, which constitutes one unlawful employment practice.

Department's dismissal of petitioner's charges of sex discrimination in counts I, III, and V. We conclude, however, that there was substantial evidence presented of retaliation against petitioner for opposing Disandro's sexual harassment. Thus, the chief legal counsel abused his discretion in upholding the Department's dismissal of counts II, IV, and VI and those counts are reinstated. We remand this cause to the Department for further appropriate proceedings on the charges.

Affirmed in part and reversed in part; cause remanded.

O'MARA FROSSARD and NEVILLE, JJ., concur.