2021 IL App (1st) 200785-U
No. 1-20-0785
Order filed March 23, 2021

Second Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | |
|---|---|
| HELENE TONIQUE WILLIAMS, | ) Petition for Direct |
| | ) Administrative Review of a |
| Petitioner-Appellant, | ) Decision of the Illinois Human |
| | ) Rights Commission. |
| v. | ) |
| | ) |
| THE HUMAN RIGHTS COMMISSION, THE | ) No. 2019 CH 633 |
| DEPARTMENT OF HUMAN RIGHTS, MALDEN | ) |
| ARMS CORPORATION and MERCY HOUSING | ) |
| MANAGEMENT GROUP, INC. | ) |
| | ) |
| Respondents-Appellees. | ) |

JUSTICE PUCINSKI delivered the judgment of the court.
Presiding Justice Fitzgerald Smith and Justice Lavin anothconcurred in the judgment.

**ORDER**

¶ 1    *Held*:  The Human Rights Commission did not abuse its discretion by sustaining the dismissal of petitioner's claims of housing discrimination and retaliation for lack of substantial evidence.

¶ 2    Petitioner Helene Williams appeals *pro se* from a final order entered by the Illinois Human Rights Commission (Commission) sustaining the Illinois Department of Human Rights' (Department) dismissal of her charge of housing discrimination and unlawful retaliation by her

former landlord Malden Arms Corporation (Malden) managed by Mercy Housing Management Group, Inc. (Mercy), brought under the Illinois Human Rights Act (Act) (775 ILCS 5/1-101, *et seq*. (West 2018)). Petitioner alleged Malden and Mercy discriminated against her by not renewing her lease and evicting her due to her sexual orientation. She also alleged they did not renew her lease and evicted her in retaliation for engaging in a protected activity, filing a previous housing discrimination charge. The Department dismissed her charge for lack of substantial evidence. The Commission sustained the Department's decision and petitioner appealed. We affirm.

¶ 3     Petitioner was a tenant in a property managed by Mercy, and in 2017, filed a charge of housing discrimination against Mercy and Malden, alleging discriminatory terms and conditions based on her sexual orientation, lesbian. Petitioner alleged that in March 2018, the parties reached an agreement to rescind the termination of her tenancy and renew her lease. On or about September 18, 2018, "[Mercy] received an eviction order against her." Petitioner alleged that Mercy never rescinded the termination of her tenancy or issued her a new termination of tenancy without her knowledge, in retaliation for filing her previous charge and due to her sexual orientation.

¶ 4     Mercy responded to petitioner's allegations, stating that the apartment building at issue is an 83-unit low-income supportive housing apartment community. The property was owned by Malden, which is an Illinois public benefit corporation. Mercy responded that it lacked specific knowledge regarding the demographic composition of the sexual orientation for each tenant household at the property because it did not collect or track this equal housing opportunity data for government reporting purposes.

¶ 5     Mercy contended that it abided by all terms of the settlement agreement in April 2018, which had no provision for Mercy to rescind petitioner's action plan and housing retention

contract. Mercy could not renew petitioner's lease because she failed to abide by the agreement where she did not "cooperate with the recertification process when she refused to provide [Mercy] with the required documentation to certify her tenant income eligibility." Mercy contended that on November 16, 2018, it evicted petitioner due to her failure to pay rent for July, August, September, October, and November 2018. Mercy raised the affirmative defense that petitioner was afforded equal terms and conditions of tenancy without regard to her sexual orientation and was provided an equal housing opportunity which was free of retaliation without regard for her protected activity.

¶ 6    Petitioner's charge was investigated by the Department. Before preparing its report, the investigator for the Department interviewed petitioner and Mary Harth, Mercy's property manager.

¶ 7    Petitioner told the investigator that she never received a copy of Mercy's mailings of her Notice of Termination of Tenancy dated October 16, 2017. She stated that in April or May 2018, she was notified by Harth (heterosexual) and then-Assistant Property Manager, Kristina Fox, that she needed to meet with Fox in May 2018 to complete her recertification paperwork. Petitioner informed the investigator that Mercy did not renew her lease as required by the settlement, even though she always paid her rent on time. She explained that in the recertification meeting in May 2018, she brought copies of her unemployment statement, bank statements, photo identification, and social security card which she gave to Fox. Fox asked for additional recertification documentation which petitioner "viewed as a form of harassment." She stated that it "was irrelevant" for Fox to request additional documentation because she already signed the lease renewal paperwork, and therefore Mercy "can't ask me for anything else, or more current, because it's after the fact, and it's harassment." Petitioner refused to give either Harth or Fox additional

paperwork, because Mercy was "supposed to automatically renew her lease" per her agreement with them to resolve the housing discrimination charge. Petitioner was not aware of any other tenant in her apartment building who refused to provide additional recertification paperwork after their initial recertification meeting but were recertified to continue to receive affordable housing.

¶ 8    Petitioner stated that on July 23, 2018, she received another Notice of Termination of Tenancy, and went to Mercy's management office and told Fox that Mercy could not evict her because her lease was already renewed. Petitioner told Fox "You see my money order (for July rent)? I have the money order to pay my rent, But I have not received a copy of my lease. You give me a copy of my lease, I'll give you the money order. Otherwise, you need to take me to court to evict me." Petitioner did not pay her rent after she received her landlord's five-days' notice for nonpayment of rent in July 2018, "because [Mercy] never gave her a copy of her renewed lease." Petitioner stated that she did not know of any tenant who was not evicted by Mercy due to non-payment of rent.

¶ 9    Harth told the investigator that in April 2018, Mercy rescinded petitioner's Notice of Termination of Tenancy dated October 16, 2017 pursuant to a settlement agreement. Harth stated that nothing in petitioner's tenant file suggested that Mercy's notice to petitioner regarding her previous Notice of Termination of Tenancy was returned by the U.S. Post Office as undeliverable. Harth explained that petitioner's recertification process began in May 2018, but the documentation she had submitted at her initial recertification meeting had expired. Mercy mailed requests for follow up recertification documentation to petitioner on June 1, 2018, June 15, 2018, July 27, 2018, August 16, 2018, and August 24, 2018, but petitioner never responded.

¶ 10    Harth stated petitioner believed that Mercy "was just supposed to recertify her automatically because she had signed the IDHR Agreement." Harth also stated petitioner stopped paying her rent for July through November 2018, and initially did not provide Mercy with any reason as to why she was not paying her rent. Petitioner later informed Harth that she would not pay her rent until she received a copy of her new lease. Harth informed the investigator that petitioner was evicted for non-payment of rent. During 2017, Mercy terminated the tenancies or evicted three tenants for non-payment of rent.

¶ 11    Mercy provided the investigator with petitioner's eviction documentation, which showed that on August 24, 2018, Mercy filed a forcible entry and detainer lawsuit against petitioner for non-payment of rent in Cook County Circuit Court. It showed petitioner was served with an eviction summons on August 31, 2018, and on September 18, 2018, a circuit court judge entered an eviction order against petitioner. Mercy also provided its Tenant Selection Plan, which stated that Mercy and the owner would "not discriminate against applicants and tenants on the basis of * * * sexual orientation * * * and will comply with the anti-discrimination laws in housing under the Federal Fair Housing Act." Mercy further provided the investigator with emails from a third-party compliance partner indicating that it needed certain documentation from petitioner to complete her recertification review, as well as the recertification documentation notices sent to petitioner. Lastly, Mercy provided its resident ledger for petitioner, which showed that on August 1, 2018, she had rent arrears of $320.94 after she failed to pay rent for July and August 2018 and paid partial rent for April, May, and June 2018.

¶ 12    Illinois Department of Human Rights provided the investigator with the Terms of Settlement and Agreement between petitioner and Mercy from March 2018. The agreement

indicated that on August 1, 2018, Mercy will recertify petitioner's tenancy for her unit and will renew her lease after certifying her tenant income eligibility and tenant income, in accordance with the Chicago Low-Income Housing Trust Fund and provided petitioner did not violate her current action plan and housing retention contract. The report included a Staff Note, which stated the agreement did not indicate petitioner's lease would automatically be renewed, but rather petitioner was still required to go through a yearly recertification process to qualify for the affordable housing unit.

¶ 13    The investigator recommended a finding of lack of substantial evidence that petitioner was evicted or had her lease terminated or not renewed due to her status as a lesbian where the evidence showed that she did not cooperate with the terms and conditions offered by Mercy for continued occupancy, and there was no nexus between Mercy's adverse eviction action and petitioner's protected sexual orientation in this matter. The investigator found that petitioner had not met all of the prongs of the *prima facie* case of housing discrimination. The evidence showed that petitioner was a member of a protected class and had leased an affordable housing unit as a low-income tenant. The evidence also showed that Mercy contacted petitioner for her recertification meeting and informed her that she was "expected to bring" certain documentation. Mercy requested this recertification documentation in June, July, and August 2018, and petitioner did not provide it. The investigator noted that it was uncontested that petitioner reached a settlement with Mercy, but the settlement did not indicate her lease would be automatically renewed and, according to the agreement, petitioner was still required to go through the annual recertification process. Not only did petitioner not go through this process, but she failed to pay her rent, so Mercy served her with a notice of termination of tenancy for non-payment of rent. Petitioner introduced no evidence

that Mercy's professed reasons for terminating her rent "had no basis in fact," especially since she was given an opportunity to recertify her tenancy. Further, petitioner did not provide "comparative reasoning or data pertaining to other similar situated non-homosexual comparisons in her apartment building with regards to the disputed issue of discriminatory non-renewal of lease and eviction, and the Department has not discovered other evidence of sexual orientation disparate treatment by [Mercy] with regards to its recertification and eviction practices."

¶ 14    The investigator also recommended a finding of lack of substantial evidence that petitioner was evicted or had her lease terminated or not renewed in retaliation for having filed a previous fair housing discrimination charge with the Illinois Department of Human Rights. The evidence showed that on November 14, 2017, petitioner filed a previous sexual orientation-based housing discrimination charge against Mercy and the owner, and in March 2018, the parties settled the matter. The evidence showed that petitioner did not submit recertification documentation despite numerous requests by Mercy, and was evicted for non-payment of rent. Petitioner provided no evidence of a nexus between her protected activity and the nonrenewal of her lease and subsequent eviction.

¶ 15    The Department subsequently dismissed petitioner's charge. Petitioner filed a request for review of the Department's decision with the Commission with two sentences of argument. Petitioner argued "there was an Equal Housing discrimination Settlement Agreement that was signed by myself and Malden Arms Limited II and the company broke the settlement agreement (*sic*). This case shouldn't be dismissed."

¶ 16    The Department responded that its investigation showed that Mercy and Malden's articulated non-discriminatory reason for evicting petitioner was that she did not pay rent. It

pointed out that petitioner did not name any similarly situated tenants who did not send the required recertification documents to petitioner nor those who did not pay rent but were not evicted. The Department found petitioner was the only tenant that was not current in her rental payments and, in fact, did not contest that she did not pay Mercy and Malden rent for the last months of her lease. Further, petitioner did not submit the required documentation according to the rules of the city of Chicago housing program. The Department argued that petitioner failed to establish a *prima facie* case for sexual orientation discrimination because no evidence was presented that Mercy and Malden subjected her to discriminatory terms because of her sexual orientation.

¶ 17    The Department further argued petitioner failed to establish a *prima facie* case of retaliation, where she did not show that she was treated differently because she engaged in a protected activity or settled a previous charge of discrimination, but rather was evicted because she did not pay rent and did not comply with the necessary recertification process.

¶ 18    On June 9, 2020, the Commission issued its final administrative decision, sustaining the Department's dismissal of the charge for lack of substantial evidence. Regarding the discrimination claim, it found petitioner did not provide evidence to show that she was a tenant in good standing with the terms and conditions of tenancy, as required to prove a *prima facie* case of housing discrimination. It found that petitioner did not pay rent from July through the end of her tenancy, and the settlement agreement did not give her the right to stop paying her rent. Because petitioner was not qualified to continue her tenancy and provided no evidence that tenants of a different sexual orientation were allowed to continue living in their apartments without paying rent, her eviction was not a violation of the Act.

¶ 19    The Commission found petitioner established a *prima facie* case for retaliation because she engaged in a protected activity in filing a discrimination charge in November 2017, Mercy and Malden took an adverse action against her when they evicted her, and the eviction was close enough in time to the completion of the previous discrimination charge to infer a causal nexus between the protected activity and the adverse action. The Commission then found Mercy and Malden articulated a legitimate, non-discriminatory reason for the termination of petitioner's tenancy: non-payment of rent. The Commission found that petitioner did not provide any evidence that Mercy and Malden's reason for the termination of her tenancy was a pretext for any retaliatory motive. It concluded petitioner did not present any evidence to show the Department's dismissal of the charge was not in accordance with the Act. On June 29, 2020, petitioner filed her petition for direct review of the Commission's decision in this court. See 775 ILCS 5/8-111(B)(1) (West 2018).

¶ 20    In this court, petitioner essentially argues that the Commission erred by sustaining the dismissal of her claims of housing discrimination and retaliation for lack of substantial evidence. She recounts that in October 2017 she filed a discrimination charge against Mercy and Malden after Fox gave her a letter for termination of her lease. The charge was settled, with Mercy and Malden agreeing to renew petitioner's lease. The settlement agreement indicated "no new harm or acts of retaliation would be done due to the charges [petitioner] filed against the company." Nevertheless, although petitioner's lease was renewed, she was never given a copy of the lease but was charged rent. Petitioner claims she stopped paying rent because she was never given a copy of her renewed lease, and "[i]t's illegal to collect rent after renewing a lease, not giving the renter/tenant a copy, as well as the Illinois Department of Human Rights a copy as told within a

Settlement." Petitioner also argues she had "continued to defend" herself against prior "gay-bash[ing]" and sexual harassment she endured from another tenant, which led to her filing police reports against him prior to Fox originally giving her a letter of termination in 2017. In her brief, she recounts an incident where she was "purposely attacked" by a non-tenant in April 2018, necessitating the filing of a restraining order.

¶ 21    As an initial matter, we note petitioner's appellate brief does not comply with Illinois Supreme Court Rule 341(h) (eff. May 25, 2018), which governs the content of appellate briefs. For example, petitioner's brief does not contain any "Points and Authorities" statement, outlining the points argued and authorities citied in the Argument (see Rule 341(h)(1)), no statement of jurisdiction (see Rule 341(h)(4)), and no argument supported by citations to the record or to legal authority (see Rule 341(h)(7)). Instead, petitioner's brief consists solely of a lengthy factual recitation detailing her settlement with Mercy and Malden and history of "gay-bash[ing]" and sexual harassment at the premises. In her brief, petitioner also recited her reasons for not paying rent from July 2018 through the end of her tenancy. She stated she never received a copy of the lease agreement for the renewal of her tenancy, and "[i]t's illegal to collect rent after renewing a lease, not giving the renter/tenant a copy, as well as the Illinois Department of Human Rights a copy as told within a Settlement." We may strike a brief and dismiss the appeal for failure to comply with the supreme court rules. *Marzano v. Dept. of Emp't. Sec.*, 339 Ill. App. 3d 858, 861 (2003). However, we have the benefit of a cogent brief from respondents the Commission and Department and so choose to reach the merits of the appeal. See *North Community Bank v. 17011 South Park Ave., LLC*, 2015 IL App (1st) 133672, ¶ 14 (reviewing merits of the appeal despite appellant's numerous violations of Supreme Court Rule 341(h)).

¶ 22    It is a civil rights violation under the Act to alter the terms, conditions or privileges of a real estate transaction or in the furnishing of facilities or services in connection therewith based on unlawful discrimination. 775 ILCS 5/3-102(B) (West 2018). Discrimination based upon an individual's sexual orientation is unlawful under the Act. 775 ILCS 5/1-102(A) (West 2018). Further, it is a civil rights violation to retaliate against a person because she "has made a charge, filed a complaint, testified, assisted, or participated in an investigation, proceeding, or hearing under this Act." 775 ILCs 5/6-101(A) (West 2018).

¶ 23    Where a petitioner brings a charge under the Act, the Department shall conduct an investigation to determine whether the allegations are supported by substantial evidence. 775 ILCS 5/7A-102(C)(1) (West 2018). "Substantial evidence is evidence which a reasonable mind accepts as sufficient to support a particular conclusion and which consists of more than a mere scintilla but may be somewhat less than a preponderance." 775 ILCS 5/7A-102(D)(2) (West 2018). If the Department determines there is no substantial evidence to support the charge, it shall dismiss the charge. 775 ILCS 5/7A-102(D)(3) (West 2018). The petitioner may then either commence a civil action in a circuit court or, as petitioner did here, file a request for review of the dismissal with the Commission. 775 ILCs 5/7A-102(D)(3) (West 2018). A petitioner may seek direct review of a final order by the Commission directly with this court. 775 ILCS 5/8-111(B)(1) (West 2018).

¶ 24    We review a final order of the Commission under the abuse of discretion standard of review. *Young v. Illinois Human Rights Comm'n*, 2012 IL App (1st) 112204, ¶ 32. Under this standard, the court should not disturb the Commission's decision unless it is arbitrary or capricious. *Id.*, ¶ 33. A decision is arbitrary or capricious if it contravenes the legislature's intent, fails to

consider a crucial aspect of the problem, or offers an impossible explanation contrary to agency expertise. *Owens v. Dep't. of Human Rights*, 403 Ill. App. 3d 899, 917 (2010).

¶ 25    We review the final order of the Commission, not the Department decision. *Zaderaka v. Illinois Human Rights Comm'n*, 131 Ill. 2d 172, 180 (1989). The Commission's findings of fact "shall be sustained unless the court determines that such findings are contrary to the manifest weight of the evidence. 775 ILCS 5/8-111(B)(2) (West 2018). A reviewing court may not reweigh the evidence or substitute its judgment for that of the Commission, and abuse of discretion will be found where no reasonable person could agree with the position of the lower court. *Young*, 2012 IL App (1st) 112204, ¶ 33.

¶ 26    As petitioner has not provided direct evidence of discrimination, she may prove discrimination through indirect evidence by showing a *prima facie* case of unlawful discrimination by a preponderance of the evidence. *Owens*, 403 Ill. App. 3d 899, 918-919 (2010) (citing *Zaderaka*, 131 Ill. 2d at 179-80). If the petitioner succeeds in establishing a *prima facie* case, the respondent must articulate, not prove, a legitimate, nondiscriminatory reason for its actions in order to rebut the presumption. *Id.* at 919. Finally, if the respondent articulates such a reason, the plaintiff must prove by a preponderance of the evidence that the respondent's reason was untrue and a pretext for discrimination. *Id.*

¶ 27    For the following reasons, we find the Commission did not abuse its discretion in sustaining the Department's dismissal of petitioner's housing discrimination charge for lack of substantial evidence that Mercy and Malden did not renew her tenancy and evicted her due to her sexual orientation. To establish a *prima facie* case of housing discrimination under the Act, the petitioner must prove (1) she belongs to a protected class; (2) respondent is aware of her membership in the

protected class; (3) she is "ready and able to accept respondent's offer to rent"; and (4) respondent refuses to deal with her. *Hsu v. Human Rights Comm'n*, 180 Ill App. 3d 949, 953 (1989). Once the petitioner has established these elements, the burden shifts to respondent to "show a legitimate reason for refusing to deal with [her]" *Id.* at 954. After the respondent articulates such a reason, the petitioner must then show the reason is a pretext for discrimination or that the reason is unworthy of belief. *Id.*

¶ 28    Here, the Commission did not abuse its discretion in finding petitioner failed to establish a *prima facie* case of housing discrimination based on her sexual orientation where she did not show she was ready and able to accept Mercy and Malden's offer to rent because she did not pay rent for the last months of her tenancy. The evidence before the Commission showed that the settlement agreement petitioner entered into with Mercy and Malden did not give her the right not to pay rent. Additionally, according to the terms of the settlement agreement, petitioner was required to complete the recertification process as a condition of her tenancy. The evidence before the Commission indicated that she did not provide Mercy and Malden with the necessary recertification documentation despite their repeated requests to her to provide it. Accordingly, petitioner has not proven that she was "ready and able" to accept petitioner's offer to rent.

¶ 29    Further, even if petitioner had established a *prima facie* case for housing discrimination based on her sexual orientation, Mercy and Malden articulated a legitimate reason for refusing to renew her tenancy and evicting her: she failed to pay rent for the months of July and August 2018, after paying partial rent during April through June 2018. Petitioner does not contest that she failed to pay rent for the last months of her tenancy, but argues that she was not required to pay rent because it was "illegal" to collect rent where she did not receive a copy of her lease. Petitioner

provided no evidence to support this argument. She also failed to complete the recertification process required to renew her lease, as indicated in the settlement agreement. The evidence showed a third-party compliance partner informed Mercy that it needed certain documentation from petitioner to complete her recertification review. It is uncontested that she failed to provide the necessary documentation despite receiving numerous requests for it.

¶ 30    Petitioner did not present any evidence to the Commission that Mercy and Malden were motivated by discriminatory animus rather than adherence to their own policies when they refused to renew her tenancy and evicted her due to nonpayment of rent. She presented no evidence to show Mercy and Malden's reason for the action was pretextual. Accordingly, the Commission did not abuse its discretion in affirming the dismissal of the count related to the termination of petitioner's tenancy due to unlawful discrimination for lack of substantial evidence.

¶ 31    We also find the Commission did not abuse its discretion in finding petitioner failed to establish Mercy and Malden retaliated against her for filing a previous fair housing discrimination charge with the Illinois Department of Human Rights. To establish a *prima facie* case of retaliation, the petitioner bears the burden to show that (1) she was engaged in a protected activity; (2) the housing provider took an adverse action against her; and (3) a causal nexus existed between the protected activity and the adverse act. See *Hoffelt v. Illinois Dept. of Human Rights*, 367 Ill. App. 3d 628, 634 (2006) (examining retaliation in an employment discrimination context). A *prima facie* case of retaliation can be established by showing a short time span between engaging in a protected activity and the housing provider's adverse action. *Id.* at 638. When a petitioner establishes a *prima facie* case of retaliation, a rebuttable presumption of unlawful discrimination arises. *Id.*

¶ 32    To rebut the presumption, the housing provider must articulate a legitimate and nondiscriminatory reason for the action. See *All Purpose Nursing Service v. Illinois Human Rights Comm'n*, 205 Ill App. 3d 816, 827 (1990) (examining retaliation in an employment discrimination context). If the housing provider articulates such a reason, the burden shifts back to the petitioner to prove by a preponderance of the evidence that the legitimate reasons offered by the respondent were merely a pretext for discrimination. *Id*. The petitioner may meet this burden by showing the proffered reason is "unworthy of belief." *Id*.

¶ 33    As the Commission found, the fact that petitioner filed a housing discrimination charge in November 2017, which was completed in May 2018, and she was evicted in September 2018 creates an inference that she was evicted because she filed the charge. Accordingly, she established a *prima facie* case of retaliation. See *Hoffelt*, 367 Ill. App. 3d at 634. Nevertheless, as set forth above, Mercy and Malden articulated a legitimate, non-discriminatory reason for her eviction, and the petitioner presented no evidence that this reason was merely a pretext for discrimination and was "unworthy of belief." See *All Purpose Nursing Service*, 205 Ill App. 3d at 827.

¶ 34    As noted above, petitioner asserts, *inter alia*, that her lease originally was terminated in October 2017 in part because she "continued to defend" herself against another tenant, who "gay-bashed" and sexually harassed her. She asserts that after making complaints with Mercy and Malden, she filed police reports against the tenant. After entering into the settlement agreement, petitioner further asserts in April 2018, she was "purposely attacked" by a non-tenant inside her apartment, requiring her to file a restraining order against the non-tenant. None of this information was apparently presented to the Department or Commission. Accordingly, we will not consider any issues on appeal not raised initially during the administrative proceeding. *Illinois Bell*

*Telephone Co. v. Human Rights Comm'n*, 190 Ill App. 3d 1036, 1044-45 (1989). Nor will we consider documents that were not before the Commission and are not part of the record on appeal. See *In re Estate of Matthews*, 409 Ill. App. 3d 780, 783 (2011) ("the record on appeal cannot be supplemented by attaching documents to the appendix of a brief."); 735 ILCS 5/3-110 (West 2018) ("No new or additional evidence in support of or in opposition to any finding, order, determination[,] or decision of the administrative agency shall be heard by the court.").

¶ 35    For the foregoing reasons, the Commission's June 9, 2020, order sustaining the Department's dismissal of petitioner's charge for lack of substantial evidence is affirmed.

¶ 36    Affirmed.