2024 IL App (1st) 230610-U
No. 1-23-0610
Order filed November 14, 2024

Fourth Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST DISTRICT
_____

| | | |
|---|---|---|
| RAMON STEVENS, | ) | Petition for Direct |
| | ) | Administrative Review of a |
| Petitioner-Appellant, | ) | Decision of the Human Rights |
| | ) | Commission. |
| v. | ) | |
| | ) | No. 21 CF 2369 |
| THE HUMAN RIGHTS COMMISSION, THE | ) | |
| DEPARTMENT OF HUMAN RIGHTS, and HEALTH | ) | |
| CARE SERVICE CORPORATION, INC., | ) | |
| | ) | |
| Respondents-Appellees. | ) | |

_____

PRESIDING JUSTICE ROCHFORD delivered the judgment of the court.
Justices Hoffman and Lyle concurred in the judgment.

**ORDER**

¶ 1    *Held*:   The Illinois Human Rights Commission did not abuse its discretion in upholding the determination of lack of substantial evidence of discrimination.

¶ 2    Petitioner Ramon Stevens filed a charge of discrimination with the Illinois Department of Human Rights (Department) alleging that Health Care Service Corporation, Inc. (HCSC) discriminated against petitioner by denying him a promotion due to his race and in retaliation for filing a prior complaint for race discrimination in violation of the Illinois Human Rights Act (Act) (775 ILCS 5/1-101 *et seq.* (West 2020)). The Department dismissed the charge for lack of

substantial evidence. Petitioner requested a review with the Illinois Human Rights Commission (Commission), which sustained the finding. Petitioner filed *pro se* a direct appeal with this court. We affirm.

¶ 3    The record establishes that petitioner was hired as an investment accountant with HCSC on or about November 2, 2009. He made an internal complaint to HCSC's hotline against his superiors in 2014 for race discrimination. Petitioner became an accountant II in 2016. He applied for a fraud investigator position in February 2020, was interviewed on March 12, 2020, and was informed on March 16, 2020, that he had not been selected for the position.

¶ 4    Petitioner filed a charge of discrimination with the Department on January 11, 2021, that was perfected on September 23, 2021.[1] Under Count A, petitioner alleged that he was denied the promotion to fraud investigator due to his race, black, although he was "well qualified" and possessed three of the five essential requirements for the position. A lesser-qualified, non-black candidate was selected instead. Under Count B, petitioner alleged that he was denied the promotion due to retaliation when he engaged in a "protected activity" in filing a complaint for race discrimination in 2014. According to petitioner, the timeframe between the complaint in 2014 and the denial of the promotion in 2020 raised an inference of a retaliatory motivation.

¶ 5    The Department investigated petitioner's charge and prepared a report dated June 7, 2022. As part of its investigation, the Department interviewed petitioner and HCSC representatives Lexi Gonzalez in human resources and senior manager James Vanderberg.

---

[1] The order issued by the Commission sustaining the Department's finding erroneously stated that petitioner's charge was filed on January 12, 2021, which would have made it untimely. This court remanded the matter to the Commission for the limited purpose of determining when petitioner filed the charge. On remand, the Commission corrected its order to reflect the actual filing date, January 11, 2021.

¶ 6    As to Count A, petitioner stated he was a "well-credentialed" employee and his work as an accountant II met HCSC's legitimate expectations. Prior to applying to the fraud investigator position in February 2020, petitioner had applied for the position in November 2017, December 2017, January 2019, and April 2019, and he also applied for an associate fraud investigator position in June 2019. He was not selected to interview for any of the positions.

¶ 7    After petitioner was not selected to interview for the June 2019 position, he met with senior director of the Special Investigations Department (SID) Lynn O'Dea on December 16, 2019, to discuss his treatment as an applicant. O'Dea informed petitioner that his experience was a better fit for the finance sector and that he was overqualified for the associate fraud investigator position. Petitioner asked her what he could do to make himself a better candidate for SID and O'Dea told him to pass the certified fraud examiner (CFE) exam, to which petitioner responded that he already had his CFE certification.

¶ 8    Petitioner applied for the fraud investigator position on February 11, 2020. The position listed the following requirements: a Bachelor's degree; three years of experience in claims processing operations and reporting systems, including two years of experience in auditing or developing computer systems; experience in Microsoft Word, Excel, and PowerPoint; knowledge of claims processing operations, statistics, and membership procedures; and auditing, analytic, and procedure writing skills. The position also listed as preferred: having a Bachelor's degree in accounting, criminal justice, nursing, or English; a CFE certification; and being an accredited health care fraud investigator.

¶ 9    Petitioner interviewed for the fraud investigator position on March 12, 2020, with O'Dea, Vanderberg, and SID director Dan Groth as the hiring panel. At the time of the interview, petitioner

possessed a Bachelor's degree in accounting, had a CFE certification, had a certified public accounting license that was expired at the time of the interview, had proficiency in Microsoft applications, had auditing experience, and had analytic and process writing skills. He had "limited" claims processing experience.

¶ 10    Petitioner received a rejection letter on March 16, 2020. He contacted human resources recruiter David Miller to inquire about why he was not selected for the position. Miller informed him that the hiring panel believed petitioner's skillset was "geared in finance verses [*sic*] health care." According to the hiring panel, the individual selected for the position had the desired qualifications and experience necessary for the position including: substantial experience working with numerous health care claims related to HCSC's internal systems; familiarity with employer group contracts, and reviewing and auditing BCBSIL health care claims for potential issues and fraud; experience cultivating long lasting relationships with a variety of employer groups; an understanding of employer agreements concerning health care claim benefits and presenting information to individuals and groups; and extensive proven experience within HCSC, having worked within multiple departments.

¶ 11    Petitioner stated that he possessed four of the five general requirements and two of three preferences for the position. Petitioner stated he believed he was granted the interview in bad faith. Petitioner believed a non-black individual was selected for the position. Petitioner worked with member services of the Association of Certified Fraud Examiners to acquire a list of people who had been hired as fraud investigators with HCSC and found of the 27 individuals hired only 6 had a CFE certification. Petitioner stated that he believed he was more qualified than the individual hired for the position and that he was not hired due to his race.

¶ 12    Gonzalez stated HCSC's equal employment opportunity and affirmative action compliance policy prohibited unlawful discrimination on the basis of race. Furthermore, the non-retaliation/non-retribution policy prohibited retaliation or retribution against any employee for reporting, in good faith, a violation or for participating in the investigation of an alleged violation.

¶ 13    Vanderberg stated that he reviewed applicants' resumes and selected candidates for interviews. O'Dea never mentioned petitioner to Vanderberg prior to petitioner being selected for an interview, nor was Vanderberg directed to interview petitioner. Vanderberg stated that petitioner's resume, his answers to the prescreening questionnaire regarding his experience, and responses during his interview indicated he lacked experience needed for the position. The hiring panel believed the candidate hired for the position had "significantly more" experience than petitioner including the requisite experience and skills for the role and "all of the qualifications" HCSC sought in a candidate.

¶ 14    In rebuttal, petitioner stated that Vanderberg focused solely on one aspect of the job description. Petitioner also stated that once he had contacted executives about his previous applications, he was labeled as "problematic."

¶ 15    As to Count B, petitioner stated that he filed a complaint based on race discrimination with HCSC in November 2014 and another complaint not based on race, but on an internal issue involving a database in 2018. He stated that the March 2020 hiring panel might have been aware of these complaints which may have "influenced their perception of him."

¶ 16    Gonzalez stated that HCSC took all complaints from employees seriously, investigated petitioner's 2014 complaint, and found it not actionable. Vanderberg stated that he had no knowledge of petitioner's 2014 complaint.

¶ 17    In rebuttal, petitioner maintained that he was granted an interview in bad faith and was blacklisted due to his 2014 complaint.

¶ 18    Per the investigation, the investigator reviewed both petitioner's and the selected candidate's resumes and answers to the prescreening questionnaire. The investigator recommended a finding of lack of substantial evidence for both counts. The investigation found no substantial evidence that HCSC failed to promote petitioner due to his race or in retaliation for his prior complaint. Petitioner failed to show that he was qualified for the position or that a lesser-qualified candidate was hired instead. HCSC not selecting petitioner for the position was not due to his race or in retaliation, but because it selected a candidate who met all five requirements whereas petitioner did not. The selected candidate had more claims processing experience than petitioner and more broad experience that the role required. Moreover, the time frame between petitioner's 2014 complaint and the denial of the promotion in 2020 did not raise an inference of retaliatory motivation.

¶ 19    The Department accepted the investigator's recommendations and dismissed petitioner's charge for lack of substantial evidence.

¶ 20    Petitioner filed a request for review with the Commission, stating that the Department investigator failed to include or consider "material articles of evidence" that were "germane" to petitioner's case, that HCSC made several "dishonest" and "misleading" statements in its responses, that the report failed to mention the hostility petitioner experienced during the interview with Vanderberg which showed bias, and that no proof corroborated the selected candidate's credentials for the position.

¶ 21 The Department filed a response to petitioner's request for review reiterating its findings that its investigation did not reveal substantial evidence supporting the charge and requested that the Commission sustain that finding. HCSC's articulated reason for not promoting petitioner, namely, that he did not have the level of claims processing experience as the selected candidate, was not based on race or retaliation. In responding to petitioner's claim that HCSC did not provide documentation as to whether HCSC verified that the selected candidate had the qualifications listed on his application, the Department determined it was "speculative as to whether such documentation exist[ed]." Therefore, petitioner failed to provide any evidence that would warrant a reversal of the Department's original determination.

¶ 22 On February 28, 2023, the Commission entered a final order sustaining the Department's dismissal for lack of substantial evidence. The Commission found that petitioner failed to establish a *prima facie* case of discrimination based on race because he was unqualified for the position and lacked the requisite claims processing experience required. Moreover, HCSC offered a legitimate and non-discriminatory reason for not hiring petitioner, being that the selected candidate satisfied all of the position's requirements and had extensive proven experience within the organization that petitioner lacked. Petitioner also failed to establish a *prima facie* case of discrimination based on retaliation as the 2014 complaint was too attenuated from his denial of a promotion to establish a causal connection. Even if petitioner had established a *prima facie* case in this regard, HCSC articulated a legitimate and non-discriminatory reason for not hiring petitioner.

¶ 23 On appeal, petitioner seeks reversal of the Commission's decision sustaining the Department's dismissal of his discrimination charge. Petitioner argues that the Commission failed to consider HCSC's "numerous inaccurate statements," "shifting explanations," and "factually

false" reasoning for not promoting petitioner. Petitioner also contends that the Commission and the Department failed to thoroughly investigate HCSC's reason for not hiring him.

¶ 24    We review the Commission's final decision for an abuse of discretion and this court will not disturb the decision unless it is arbitrary or capricious. *Young v. Illinois Human Rights Comm'n*, 2012 IL App (1st) 112204, ¶¶ 32-33. A decision is arbitrary or capricious if it "contravenes legislative intent, fails to consider a critical aspect of the matter, or offer[s] an explanation so implausible that it cannot be regarded as the result of an exercise of the agency's expertise." *Id.* ¶ 33. Moreover, we may not reweigh the evidence or substitute our judgment for that of the Commission. *Id.*

¶ 25    Under the Act, a petitioner may file a charge of discrimination with the Department within 300 days of the alleged civil rights violation. 775 ILCS 5/7A-102(A)(1) (West 2020). After investigating a charge, the Department issues a report determining whether the allegations are supported by "substantial evidence." 775 ILCS 5/7A-102(C)(1) (West 2020). Substantial evidence is defined as "evidence which a reasonable mind would find sufficient to support a particular conclusion and consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." 775 ILCS 5/7A-102(D)(2) (West 2020). Mere speculation and conjecture do not constitute substantial evidence of discrimination. *Folbert v. Department of Human Rights*, 303 Ill. App. 3d 13, 25 (1999). If substantial evidence is not found, the Department must dismiss the charge. 775 ILCS 5/7A-102(D)(3) (West 2020).

¶ 26    If the Department dismisses a charge, a petitioner may request review of that dismissal with the Commission. *Id.* In conducting its review, the Commission may consider "the Department's report, any argument and supplemental evidence timely submitted, and the results

- 8 -

of any additional investigation conducted by the Department." 775 ILCS 5/8-103(B) (West 2020). Where the Commission sustains the Department's dismissal in a final order, the petitioner may seek direct administrative review by this court. 775 ILCS 5/8-111(B)(1) (West 2020).

¶ 27 Discrimination may be proven through either direct or indirect evidence. *Sola v. Illinois Human Rights Comm'n*, 316 Ill. App. 3d 528, 536 (2000). Here, as there was no direct evidence of discrimination, petitioner was required to establish a *prima facie* case of unlawful discrimination by a preponderance of the evidence. *Zaderaka v. Illinois Human Rights Comm'n*, 131 Ill. 2d 172, 179 (1989). If a *prima facie* case is established, a rebuttable presumption arises that an employer unlawfully discriminated against a petitioner, which the employer can rebut by articulating a legitimate and non-discriminatory reason for its decision. *Id*. If the employer rebuts the presumption, the petitioner must prove by a preponderance of the evidence that the "articulated reason was not [the] true reason, but was instead a pretext for unlawful discrimination." *Id*.

¶ 28 The Act prohibits unlawful discrimination on the basis of race. 775 ILCS 5/1-102(A) (West 2020). Furthermore, under section 5/2-102(A) of the Act, it is a civil rights violation for an employer to refuse to promote an individual on the basis of unlawful discrimination. 775 ILCS 5/2-102(A) (West 2020). To establish a *prima facie* case of unlawful discrimination in a case involving an alleged denial of a promotion premised on race, a petitioner must show that "(1) he was a member of a protected class; (2) he was qualified for and applied for promotion; (3) he was rejected; and (4) other equally or less qualified persons, who were not class members, were promoted or the benefit remained open." *Board of Regents for Regency Universities v. Human Rights Comm'n*, 196 Ill. App. 3d 187, 196 (1990).

¶ 29 Here, we do not find that the Commission abused its discretion in finding that petitioner failed to establish a *prima facie* case for unlawful discrimination. In particular, petitioner has not shown that his race was a factor in why HCSC failed to promote him as he has failed to establish that he was qualified for the position sought. During his interview with the Department, petitioner admitted that he possessed only three of the five requirements for the position and specifically lacked the requisite three years of claims processing experience and knowledge explicitly required for the role. Even if petitioner had established a *prima facie* case, the investigator determined that HCSC provided a legitimate and nondiscriminatory reason for denying petitioner the promotion when it hired a qualified candidate who possessed all the requirements and experience necessary for the position. As such, the Commission properly sustained the determination of lack of substantial evidence of discrimination on this basis.

¶ 30 Section 6-101(A) of the Act also provides that it is a civil rights violation for a person to retaliate against another person because that person "opposed or reported conduct that the person reasonably and in good faith believes to be prohibited," "made a charge, filed a complaint, testified, assisted, or participated in an investigation, proceeding, or hearing under th[e] Act," or "requested, attempted to request, used, or attempted to use a reasonable accommodation as allowed by th[e] Act." 775 ILCS 5/6-101(A)(i)-(iii) (West 2020). To establish a *prima facie* case of retaliation, a petitioner must show that "(1) he was engaged in a protected activity; (2) his employer committed a material adverse act against him; and (3) a causal nexus existed between the protected activity and the adverse act." *Hoffelt v. Illinois Department of Human Rights*, 367 Ill. App. 3d 628, 634 (2006). Retaliatory discrimination can be established by showing a short time span between the filing of the charge and the adverse action. *Id*. at 638.

¶ 31    Here, we do not find that the Commission abused its discretion in finding that petitioner failed to establish a *prima facie* case for retaliation in denying him a promotion as, although petitioner participated in a protected activity in filing the 2014 complaint, the six-year period between the complaint and the 2020 promotion denial is too attenuated to establish a causal nexus between the two events. See *Maye v. Human Rights Comm'n*, 224 Ill. App. 3d 353, 362 (1991) ("short" time spans of one week to four and a ½ months sufficient to show a causal nexus). Moreover, even if petitioner had established a *prima facie* case, as explained, HCSC provided a legitimate and nondiscriminatory reason for denying petitioner the promotion. As such, the Commission properly sustained the determination of lack of substantial evidence of discrimination on this basis as well.

¶ 32    We therefore do not find that the Commission acted in an arbitrary or capricious manner in upholding the Department's dismissal of petitioner's discrimination charge due to lack of substantial evidence. See *Young*, 2012 IL App (1st) 112204, ¶ 33.

¶ 33    For the foregoing reasons, the final decision of the Commission is affirmed.

¶ 34    Affirmed.