In the

# United States Court of Appeals
### For the Seventh Circuit

———————————

No. 17-3136

GLORIA D. FIELDS,

*Plaintiff-Appellant,*

*v.*

THE BOARD OF EDUCATION OF THE CITY OF CHICAGO & CHAD P.
WEIDEN,

*Defendants-Appellees.*

———————————

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 15 C 4581 — **Rebecca R. Pallmeyer**, *Judge.*

———————————

ARGUED JUNE 12, 2019 — DECIDED JUNE 27, 2019

———————————

Before WOOD, *Chief Judge*, and BARRETT and ST. EVE, *Circuit
Judges.*

PER CURIAM. Gloria Fields, a 63-year-old African-Ameri-
can woman, retired in 2016 from her job as a teacher with Chi-
cago Public Schools. She sued the Board of Education and the
principal of the school where she worked, alleging that they
discriminated against her because of her race and age and re-
taliated against her for filing this lawsuit, in violation of 42

U.S.C. § 1981 and the Age Discrimination in Employment Act, 29 U.S.C. §§ 621–34. The district court entered summary judgment for the defendants on all Fields's claims, concluding that Fields did not suffer an adverse employment action. We agree.

I.  *Background*

Fields was a teacher at Edgebrook Elementary School from 2002 until May 2016, when she retired. Chad Weiden became the principal of Edgebrook in July 2013, and he required all teachers to submit weekly lesson plans to him. Weiden provided feedback on teachers' plans during the 2014–15 school year, and he informed Fields that her lesson plans were too scripted and too long.

Weiden also conducted informal observations of teachers, including Fields. He observed often that Fields's teaching was disconnected from her lesson plans and that students were not engaged with the material. Weiden suggested ways for her to improve, but Fields incorporated his suggestions sporadically and refused later offers to assist with her lessons. Based partly on Weiden's observations, Chicago Public Schools rated Fields's job performance for the 2013–14 and 2014–15 school years as "developing," which ranks below a "proficient" rating.

Beginning in 2014, Weiden responded to several incidents by issuing Fields "pre-meeting notices" informing her that she had to attend a meeting to develop a performance improvement plan. First, Fields did not attend an evening "open house" in February 2014—despite working at the school that day—that she acknowledges Weiden would have wanted her to attend. She also did not inform the school's administration

that she would not attend. Next, without notifying Weiden, Fields did not attend a mandatory "professional development session" in November 2014. Then, in 2015, Fields did not submit request forms for a field trip on time and completed the forms only after several requests from Weiden. Fourth, Fields did not attend a "principal-directed preparation period" in September 2015. Fields also received notices for failing to turn in lesson plans and failing to properly notify the school about requested leave. The notices stated that Fields could receive a "formal warning" or a "final warning" after the meetings, or that Weiden could recommend her dismissal to the Board.

When Fields accrued three performance improvement plans, she faced possible disciplinary action. The teachers' union and the Board agreed to mediate the dispute with Fields in January 2016, and both Weiden and Fields attended. The Board's opening position was that Fields could retire with a "do not hire" designation, preventing her from being rehired. The mediator, however, asked Weiden if he objected to Fields's performance-improvement plans being downgraded. Weiden did not object because he wanted Fields to improve her performance, so Fields received no discipline as a result of the performance-improvement plans.

After the mediation, Fields took a leave of absence under the Family and Medical Leave Act. She retired in May 2016 without ever returning to work.

Fields then sued Weiden and the Board of Education for discriminating against her based on her race and age; she later added a retaliation claim for filing this lawsuit. (She also sued Weiden for intentional infliction of emotional distress, but she abandons that claim on appeal so we do not address it.) The district judge entered summary judgment for the defendants,

reasoning that Fields's discrimination claims failed because she could not show that she suffered an adverse employment action. The court added that Fields had "little to suggest that considerations beyond individuals' job performance entered into the Defendants' calculations, and even less to suggest that Weiden's nondiscriminatory explanations for his behavior was 'mere pretext.'" And the defendants were entitled to judgment on Fields's retaliation claim, the court said, because she did not prove that she had suffered a materially adverse employment action. Fields was not constructively discharged, the court reiterated, and the possibility of discipline or termination following the pre-meeting notices was not serious enough to dissuade a reasonable employee from engaging in protected activity.

II. *Analysis*

We review the district court's entry of summary judgment de novo, construing all facts and drawing all reasonable inferences in favor of Fields, the opponent of summary judgment. *See Abrego v. Wilkie*, 907 F.3d 1004, 1011 (7th Cir. 2018). On appeal, Fields argues that she presented enough evidence to get past summary judgment on her discrimination and retaliation claims. On the discrimination claims, she argues that she suffered an adverse employment action because she was constructively discharged and because the Board tried to have her fired at the mediation. On the retaliation claims, Fields adds that she suffered an adverse action because Weiden issued her multiple pre-meeting notices after she filed this suit. She also points to the mediation in January 2016 as a possible adverse action.

A. *Discrimination Claims*

We examine all the evidence when reviewing employment discrimination claims to determine whether the defendants' adverse employment actions were motivated by a proscribed factor such as race or age. *See Ortiz v. Werner Enters., Inc.*, 834 F.3d 760, 765 (7th Cir. 2016). The framework established by *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), has not been "displaced," *see Ferrill v. Oak Creek-Franklin Joint Sch. Dist.*, 860 F.3d 494, 499-500 (7th Cir. 2017), and we follow the district court and the parties in using it. Thus, Fields had to present evidence that (1) she is a member of a protected class, (2) she was meeting the Board's legitimate expectations, (3) she suffered an adverse employment action, and (4) similarly situated employees outside of her protected class were treated more favorably. *See Oliver v. Joint Logistics Managers, Inc.*, 893 F.3d 408, 412 (7th Cir. 2018) (race discrimination); *Carson v. Lake Cty., Ind.*, 865 F.3d 526, 533 (7th Cir. 2017) (age discrimination). We apply the same standard to discrimination claims under § 1981, Title VII, and the Age Discrimination in Employment Act. *See Lane v. Riverview Hosp.*, 835 F.3d 691, 695 (7th Cir. 2016) (Title VII and § 1981); *Simpson v. Franciscan All., Inc.*, 827 F.3d 656, 661 (7th Cir. 2016) (noting framework applies to "claims of both age and race discrimination").

The Board contends that Fields's discrimination claims fail because she did not suffer an adverse employment action, but Fields maintains that she was constructively discharged. We have recognized two types of constructive discharge. The first occurs when a plaintiff resigns due to discriminatory "working conditions even more egregious than that required for a hostile work environment claim." *Wright v. Ill. Dep't of Children and Family Servs.*, 798 F.3d 513, 527 (7th Cir. 2015). The

second occurs when an employer acts in a manner that would make clear to a reasonable employee that she will be immediately fired if she does not resign. *Id.*; *Chapin v. Fort-Rohr Motors, Inc.*, 621 F.3d 673, 679–80 (7th Cir. 2010).

Fields cannot show that she was constructively discharged. She has no evidence that she was subjected to a threat of violence or other conditions that are more severe than those required to establish a hostile work environment. *See Wright*, 798 F.3d at 527; *Chapin*, 621 F.3d at 679 (raised voices and one threat insufficient). She also has no evidence that her working conditions were objectively intolerable. She asserted at oral argument that her situation is similar to the one we saw in *Equal Emp't Opportunity Commission v. Costco Wholesale Corp.*, 903 F.3d 618, 621–24, 628–29 (7th Cir. 2018), but in that case a Costco employee was stalked by a customer for at least 13 months, and the harassment was so severe that the employee secured a "No Contact Order" from the state courts. Nothing of the kind happened here. And although Fields argues that *she* felt compelled because of her doctors' advice not to return to work following her leave of absence, she has no evidence that a reasonable person would have felt compelled to retire or quit. *See Green v. Brennan*, 136 S. Ct. 1769, 1776–77 (2016).

Further, Fields cannot point to any actions that would put a reasonable employee on notice of her imminent firing. *See Wright*, 798 F.3d at 527; *Chapin*, 621 F.3d at 679–80. Fields asserts that the pre-meeting notices and the mediation confirm that the Board wanted to fire her. But initiating disciplinary procedures does not necessarily mean that an employer is preparing to fire an employee because the employer could, for example, hope that criticism will lead to better performance

by the employee. *See Lloyd v. Swifty Transp., Inc.*, 552 F.3d 594, 602 (7th Cir. 2009); *Oest v. Ill. Dep't of Corr.*, 240 F.3d 605, 613 (7th Cir. 2001), *overruled on other grounds by Ortiz*, 834 F.3d at 765. And here, the mediation resulted in no punitive measures, and Weiden provided sworn testimony that he did not oppose Fields receiving no discipline because he wanted her performance to improve. If anything, the outcome of the mediation would lead a reasonable employee to conclude that her job was secure. Fields therefore cannot show that, had she not retired before returning from medical leave, the Board would have fired her. *See Chapin*, 621 F.3d at 680.

Fields also suggests that the negative performance reviews and performance improvement plans constitute adverse employment actions. She is incorrect. *See Boss v. Castro*, 816 F.3d 910, 917–18 (7th Cir. 2016) (performance improvement plan); *Langenbach v. Wal-Mart Stores, Inc.*, 761 F.3d 792, 799 (7th Cir. 2014) (negative review and performance improvement plan in FMLA retaliation context).

### B. *Retaliation Claim*

Fields's retaliation claim fares no better. To survive summary judgment Fields needed evidence that would permit a reasonable factfinder to conclude that her engagement in protected activity caused a materially adverse employment action. *See Madlock v. WEC Energy Group, Inc.*, 885 F.3d 465, 472 (7th Cir. 2018); *Lauth v. Covance, Inc.*, 863 F.3d 708, 716 (7th Cir. 2017). Once again, Fields cannot establish that she suffered an adverse employment action after filing this lawsuit, let alone one taken with the intent to retaliate. As we described above, the record does not permit the inference that she was constructively discharged. And she did not experience anything else that rises to the level of a materially adverse employment

action. The pre-meeting notices, which *warned* that discipline was possible, and the mediation, which resulted in *no* discipline, did not affect Fields's career prospects or salary. *See Poullard v. McDonald*, 829 F.3d 844, 856 (7th Cir. 2016). And the performance improvement plans, even though they had the *potential* to lead to termination or other discipline, are not enough. *See Davis v. Time Warner Cable of Se. Wis., L.P.*, 651 F.3d 664, 677 (7th Cir. 2011).

Without evidence that she suffered an adverse action, Fields's discrimination and retaliation claims must fail. The judgment of the district court, therefore, is AFFIRMED.