2023 IL App (1st) 221092

No. 1-22-1092

Opinion filed October 27, 2023

FIFTH DIVISION

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

| | | |
|---|---|---|
| LARA STACHLER | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellant, | ) | Cook County. |
| | ) | |
| v. | ) | No. 2021 L 10663 |
| | ) | |
| THE BOARD OF EDUCATION OF THE CITY | ) | Honorable |
| OF CHICAGO, | ) | Daniel J. Kubasiak, |
| | ) | Judge presiding. |
| Defendant-Appellee. | ) | |

PRESIDING JUSTICE MITCHELL delivered the judgment of the court, with opinion.
Justice Lyle and Justice Navarro concurred in the judgment and opinion.

**OPINION**

¶ 1    Plaintiff Lara Stachler appeals the dismissal of her complaint against defendant Board of

Education of the City of Chicago, alleging that the Board committed various workplace civil rights

violations. This case raises two main issues on appeal: did the trial court err in dismissing

Stachler's claims by either (1) finding sufficiently pled allegations to be inadequate or (2) drawing

improper factual conclusions? For the reasons below, we affirm.

¶ 2                              I. BACKGROUND

¶ 3    Stachler began her employment as a speech-language pathologist with Chicago Public

Schools in 2017. In March 2020, the COVID-19 pandemic forced the schools to move to remote

instruction. Stachler was several months pregnant at the time, and toward the end of the summer of 2020, she gave birth to a daughter. Consequently, she began the following school year on maternity leave. During that period, she breastfed her newborn.

¶ 4 When Stachler's maternity leave ended, the schools had resumed in-person classes. Shortly before returning, Stachler received her work assignment. She was directed to complete three hours of training videos and attend a four-hour orientation before beginning work at three different schools, two elementary schools and a high school. In anticipation of her return, Stachler requested that she be provided with a private space for lactation at each assigned school. She also requested permission to work remotely until she had confirmation of those spaces. Each school provided Stachler with a private space; however, the private space in the high school was on a separate floor from Stachler's work area.

¶ 5 Upon returning to work in person, Stachler reached out to her supervisor, Alia Koertner, regarding a perceived imbalance in her work schedule compared to her coworkers. Koertner responded to the request by telling Stachler that "[t]his is what the assignment is currently." Stachler did not pursue the matter further. However, over the ensuing weeks, she made various other requests for accommodations. First, she requested flexible work hours to accommodate the breaks she needed to express milk. At the same time, she requested permission to work remotely whenever her students were being taught remotely. Stachler received no response to these requests. Several weeks later, Stachler determined that she could not continue to work the specific in-person hours the school required while also taking the breaks she needed to express milk, so she requested an accommodation for fully remote work. This request was denied. She was, however, permitted to work remotely on several occasions.

¶ 6    A week and a half after her request for full-time telework was denied, Stachler received an e-mail instructing her to attend a pre-discipline meeting to discuss possible attendance abuse, absenteeism, and insubordination. During the meeting, Koertner insisted that Stachler had been provided with adequate accommodations. Koertner also brought up issues with Stachler's progress notes, her emergency contact form, and potential secondary employment. Several days after the meeting, Stachler followed up requesting an immediate leave of absence. The Board agreed to the request.

¶ 7    Stachler subsequently filed a lawsuit against the Board seeking compensatory and punitive damages for violations of the Nursing Mothers in the Workplace Act (820 ILCS 260/1 *et seq.* (West 2022)) and the Illinois Human Rights Act (775 ILCS 5/1-101 *et seq.* (West 2022)). During the proceedings in the lower court, she took the opportunity to amend her complaint and added a request for injunctive relief. The circuit court dismissed all 10 counts of the amended complaint (see 735 ILCS 5/2-619.1 (West 2022)), and this timely appeal followed (Ill. S. Ct. R. 303(a) (eff. July 1, 2017)).

¶ 8                                            II. ANALYSIS

¶ 9    A party may file a combined motion for dismissal under section 2-615 (735 ILCS 5/2-615 (West 2022)) alongside a motion under section 2-619 (*id.* § 2-619). *Id.* § 2-619.1. A section 2-615 motion to dismiss points out defects in the pleadings. *Id.* § 2-615(a). This motion "admits the truth of the facts alleged in support of the claim but denies the legal sufficiency of those facts." (Emphasis omitted.) *Barber-Colman Co. v. A&K Midwest Insulation Co.*, 236 Ill. App. 3d 1065, 1075 (1992). A section 2-619 motion "admits both the truth of the facts alleged in support of the

claim and the legal sufficiency of the claim, but it raises affirmative matters which it asserts defeat the claim." (Emphases omitted.) *Id.*

¶ 10 Stachler argues that her complaint contained well-pled allegations and the trial court erred by drawing improper factual conclusions when it dismissed her case.[1] Specifically, she asserts that she stated viable claims under the Nursing Mothers in the Workplace Act and the Illinois Human Rights Act for the denial of reasonable accommodations and employment opportunities, a forced leave of absence, harassment, and retaliation. Stachler further argues that the trial court erred when it struck her class-action allegations. We review each of these questions *de novo*. *Cretella v. Azcon, Inc.*, 2022 IL App (1st) 211224, ¶ 11.

¶ 11 A. Accommodations Requests—Illinois Human Rights Act

¶ 12 The Illinois Human Rights Act provides a cause of action when an employer rejects an employee's request for a reasonable accommodation for "any medical or common condition" of an employee "related to pregnancy or childbirth." 775 ILCS 5/2-102(J)(1) (West 2022). Lactation is a "[c]ommon condition" within the meaning of the statute. 56 Ill. Adm. Code 2535.20 (2015). Employees have a duty to "[a]pprise the employer of the job applicant's or employee's pregnancy condition." And the act requires the employer to engage with the employee "in a timely, good faith, and meaningful exchange to determine effective reasonable accommodations." 775 ILCS 5/2-102(J)(1) (West 2022); see also 56 Ill. Adm. Code 2535.150(a)(2) (2015) (requiring employees to "[c]ooperate in any ensuing discussion and evaluation aimed at determining the possible or

---

[1]The American Civil Liberties Union; the Center for Worklife Law; Latham & Watkins, LLP; the National Employment Lawyers Association of Illinois; and the Edwin F. Mandel Legal Aid Clinic of the University of Chicago Law School have submitted briefing in this case as *amici curiae* in support of Stachler's position. We have addressed their arguments in the body of this opinion when relevant to the issues raised by the parties and found them unpersuasive.

feasible accommodations"). However, employers are relieved of the obligation to provide accommodations if they "can demonstrate that the accommodation would impose an undue hardship on the ordinary operations of the [employer's] business." 56 Ill. Adm. Code 2535.100(a) (2015).

¶ 13                                1. Schedule Accommodations

¶ 14    Over the several weeks after she returned from her maternity leave, Stachler made a number of ADA requests for accommodations to her schedule. She first sought a flexible work schedule and the ability to work remotely when her students attended school remotely. After these requests went unanswered, Stachler requested full-time telework. The Board rejected this final request. The Board contends that it did not violate the statute because the statute only requires the provision of reasonable accommodations, and Stachler's requested accommodations were unreasonable.

¶ 15    A reasonable accommodation is one that enables an employee "to perform the essential functions of [her] position." 775 ILCS 5/2-102(J) (West 2022). Thus, if the accommodation prevented Stachler from performing her essential functions, then it is necessarily unreasonable. See *Severson v. Heartland Woodcraft, Inc.*, 872 F.3d 476, 481 (7th Cir. 2017) (determining that an individual does not qualify under the ADA if "the proposed accommodation does not make it possible for the employee to perform his job"). And one such essential function is "regular attendance." Courts "presume that an employer's understanding of the essential functions of the job is correct, unless the plaintiff offers sufficient evidence to the contrary." *Gratzl v. Office of Chief Judges of 12th, 18th, 19th, & 22nd Judicial Circuits*, 601 F.3d 674, 679 (7th Cir. 2010). The Board asserts that regular attendance is an essential job function because the Board "requires its

faculty and staff who serve students to work the hours posted as the regular school day at their schools." Furthermore, the Board's rules provide that "[a]n essential function of most jobs includes the requirement that the employee work on-site in the workplace."

¶ 16     In response, Stachler argues that the cases that the Board relies on interpret the ADA, not the Illinois Human Rights Act. Stachler maintains that, unlike the ADA, the regulations implementing the Illinois Human Rights Act allow for accommodations even when an employee cannot perform essential functions. She points to a regulation that provides "[i]f, as a result of a job applicant's or employee's pregnancy condition, the job applicant or employee is unable to perform the essential functions of her current position, the job applicant or employee may request accommodation." 56 Ill. Adm. Code 2535.130(a) (2015). But Stachler's interpretation is a misreading of the rule. The regulation merely provides that, if a pregnant employee cannot perform the essential functions of her current position without an accommodation, she is free to request an accommodation that would allow her to do so. The regulation does not require employers to provide accommodations beyond the requirements of the Illinois Human Rights Act. The act only requires accommodations that allow an employee "to perform the essential functions of [her] position." 775 ILCS 5/2-102(J) (West 2022). If Stachler's reading were correct, this language would become nonsensical.

¶ 17     Stachler's reliance on *Gentile v. County of DuPage*, 583 F. Supp. 3d 1167 (N.D. Ill. 2022), is misplaced. There, the court determined that Gentile had sufficiently alleged that he could perform all essential functions while working remotely when he stated in his complaint that he, in fact, did perform "all essential functions of his job" during the period of time when he teleworked due to COVID-19. *Id.* at 1174. Here, Stachler made no comparable allegations in her complaint.

To the contrary, she conceded in her request for accommodation (an exhibit to her complaint) that telework was not "in the best interest of students nor myself." See *Gagnon v. Schickel*, 2012 IL App (1st) 120645, ¶ 18 ("Where an exhibit contradicts the allegations in a complaint, the exhibit controls."). Under the Illinois Speech-Language Pathology and Audiology Practice Act, speech-language pathologists are prohibited from providing remote therapy unless it is "equivalent to the quality of services delivered in person in a clinic setting." 225 ILCS 110/8.2(b)(5) (West 2018). Moreover, the allegations in Stachler's complaint about her work rotation at three schools and regular meetings with special education teachers highlight that telework was impractical and not reasonable. A "general consensus [exists] among courts that jobs often require face-to-face collaboration." (Internal quotation marks omitted.) *Yochim v. Carson*, 935 F.3d 586, 592 (7th Cir. 2019).

¶ 18 Moreover, Stachler exaggerates the holding of *Gentile* by claiming it makes a "compelling argument *** that an employer admits by its actions that telework is a reasonable accommodation where it allows telework at some times and for some employees." This "compelling argument" amounts to a short paragraph in which the court states "[i]t is difficult to know what, exactly, to make of that allegation." *Gentile*, 583 F. Supp. 3d at 1174. The relevance of other employees receiving telework accommodations is dependent on whether those employees are similarly situated to the plaintiff. *Id.* Simply pointing out that other employees were permitted to work remotely ignores important context.

¶ 19 Stachler also argues that an e-mail sent by Kaitlyn Girard, a labor relations officer for the Board, "specifically said *** that lactating employees like Stachler would be permitted to telework." Not true. Instead, the e-mail simply said that "we will be extending accommodations

for pregnant and nursing staff members." And Stachler was extended an accommodation: the Board provided her with a private room for lactation. Moreover, even if Girard had explicitly assured nursing mothers that they would be able to work remotely, such an assurance does not create a right to telework as an accommodation. The Illinois Human Rights Act does not require employers to provide every possible accommodation or even the accommodations the employers insist they will provide; the act requires only that they must provide reasonable accommodations.

¶ 20                                   2. Light Duty Accommodation

¶ 21     Stachler next alleges that she made a light duty request in order to accommodate her need to express breast milk. However, the record does not support her claim that she ever made such a request. See *Gagnon*, 2012 IL App (1st) 120645, ¶ 18 ("Where an exhibit contradicts the allegations in a complaint, the exhibit controls."). The e-mail exchange that she points to as the basis for the claim only acknowledges that there is an apparent discrepancy between Stachler's caseload and the caseloads of other speech-language pathologists. At no point did she explicitly ask for a lighter workload. But even assuming that the e-mails were a request, the record does not support the conclusion that the request was meant to accommodate Stachler's need to express breast milk. At no point in the correspondence does Stachler mention expressing breast milk, her lactation schedule, or anything to do with pregnancy in any way. Instead, the e-mails express an intent to address a perceived work imbalance between different pathologists. While an unbalanced workload may be unfair, it is not a human rights violation.

¶ 22                                   3. Private Lactation Room

¶ 23     The Illinois Human Rights Act provides a list of examples of potential pregnancy-related accommodations that an employer may implement. One of these examples is for employers to

provide employees with "private non-bathroom space for expressing breast milk and breastfeeding." 775 ILCS 5/2-102(J) (West 2022). The Board provided Stachler with a private non-bathroom space for lactation. However, Stachler argues that, because the space was on a different floor than the floor that she worked on, the provided space was not a reasonable accommodation. The Board responds that the statutory language does not require a space in "close proximity" to the petitioner's workplace. But the Board misconstrues the statute.

¶ 24    The act provides that a reasonable accommodation "may include, but is not limited to *** private non-bathroom space for expressing breast milk and breastfeeding." *Id.* The language clearly indicates that the list is not meant to be exhaustive. Instead, the employer must determine what accommodations a petitioner needs on a case-by-case basis through a "timely, good faith, and meaningful exchange." *Id.* § 2-102(J)(1). However, Stachler did not explicitly request a space close to her workplace; she requested only to be provided "a private space to express *** milk twice a day during the school day." And that is what she was given. The act requires both the employer and the employee to engage in an exchange. If the employee requests an accommodation, the employer provides the requested accommodation, and the employee never complains about the provided accommodation, the employee cannot later cry foul because the accommodation was not what she had envisioned. See *Tolene v. T-Mobile, USA, Inc.*, 178 F. Supp. 3d 674, 686 (N.D. Ill. 2016) (holding that the plaintiff had not alleged a violation of the statute where she had been provided with space for lactation and she did not allege "any objection to the adequacy of the space"). Therefore, it was up to Stachler to inform the Board that the accommodation was inadequate, but she never did.

¶ 25                    B. Nursing Mothers in the Workplace Act

¶ 26    Stachler next argues that the trial court erred in finding that the Nursing Mothers in the Workplace Act does not provide a private cause of action; however, we need not reach that question if the Board did not violate the statute. See *1541 North Bosworth Condominium Ass'n v. Hanna Architects, Inc.*, 2021 IL App (1st) 200594, ¶ 50 ("The only reason to even consider implying a private right of action in a statute or ordinance is to redress a *violation* of that enactment." (Emphasis in original.)). Stachler alleges that the Board violated the portion of the act that provides "[a]n employer shall make reasonable efforts to provide a room or other location, in close proximity to the work area, other than a toilet stall, where an employee *** can express her milk in privacy." 820 ILCS 260/15 (West 2022). Stachler asserts that she alleged that the room provided to her by the schools was not in close proximity to her workplace. Therefore, it was improper for the circuit court to find that the Board had satisfied its obligation simply because it had provided Stachler with a private room in which to express milk, regardless of its proximity to Stachler's workplace. This conclusion, she contends, was improper because whether the private room was in close proximity to her workplace is a question of fact for the jury.

¶ 27    However, the close proximity of the private lactation room is irrelevant to whether the Board violated the statute because the statute requires only that an employer "make reasonable efforts" to provide such a room. Stachler did not allege that the Board failed to do so. Illinois courts have never had occasion to define what constitute "reasonable efforts;" however, a searching analysis is not required here. The Board provided Stachler with a private room in which to lactate that was not a bathroom stall and was in the same building where Stachler worked. While there may be an open factual question of whether that room was in "close proximity," there is no dispute that Stachler failed to inform the Board that the room provided was inadequate. Had Stachler

complained and the Board refused to consider alternative accommodations, then the Board's actions may have been unreasonable. However, without any objection to put the Board on notice that the room was inadequate, it had no reason to believe that its efforts were not reasonable and no reason to exert further efforts to try to accommodate Stachler's need for a lactation room.

¶ 28                                C. Class Action

¶ 29     Stachler further argues that the trial court erred by striking her class-action allegations regarding telework to accommodate nursing mothers' lactation schedules in Chicago Public Schools. However, she has failed to allege even an individual claim; therefore, she cannot maintain a class action. *Oliveira v. Amoco Oil Co.*, 201 Ill. 2d 134, 156 (2002) (" 'a dismissal for failure to state a cause of action will render moot the question of certification of the class' " (quoting 4 Richard A. Michael, Illinois Practice, Civil Procedure Before Trial § 30:2 n.2 (1989))).

¶ 30                                D. Retaliation

¶ 31     Stachler next argues that the Board retaliated against her for requesting accommodations for her pregnancy-related conditions. The Illinois Administrative Code prohibits an employer from taking "an adverse action against a qualified job applicant or employee because the job applicant or employee requested or needed an accommodation for her known pregnancy condition." 56 Ill. Adm. Code 2535.210(a) (2015). To establish a *prima facie* case for retaliation, Stachler must show that "(1) she was engaged in a protected activity; (2) her employer committed a material adverse act against her; and (3) a causal nexus existed between the protected activity and the adverse act." *Hoffelt v. Department of Human Rights*, 367 Ill. App. 3d 628, 634 (2006). The standard for determining whether an employer's act is "materially adverse" is less demanding in retaliation cases than discrimination cases. *Id.* at 635-36. It requires only that the plaintiff show that the

challenged action "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Id.* at 635 (quoting *Burlington Northern & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006)). Generally, "petty slights, minor annoyances, and simple lack of good manners will not create such deterrence." *Burlington*, 548 U.S. at 68. If the plaintiff can allege a *prima facie* case, then the employer must articulate a legitimate, nondiscriminatory reason for the action. *Thai v. Triumvera 600 Naples Court Condominium Ass'n*, 2020 IL App (1st) 192408, ¶ 43. If the employer can do so, the burden shifts back to the plaintiff to "prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." *All Purpose Nursing Service v. Human Rights Comm'n*, 205 Ill. App. 3d 816, 827 (1990) (quoting *Smith v. Chicago Board of Education*, 176 Ill. App. 3d 109, 114 (1988)).

¶ 32     Here, the first element of retaliation is easily satisfied, as requesting an accommodation for a pregnancy-related condition is explicitly protected under the statute; therefore, Stachler was engaged in a protected activity. Stachler next alleges that the Board took four actions that were materially adverse to her: the Board (1) gave her "unnecessarily burdensome job assignments," (2) refused "to accommodate reasonable requests," (3) conducted "a retaliatory interview," and (4) issued "a retaliatory disciplinary notice." Assuming for the sake of argument that each of these actions is materially adverse, Stachler has failed to allege a causal connection between the former two actions and Stachler's accommodations requests. First, there is no indication that the Board assigned Stachler a burdensome work schedule because she made accommodations requests. In fact, Stachler received her work assignment *before* making any requests for accommodations, and that work assignment never changed. It is impossible for Stachler's accommodations requests to

have retroactively caused retaliation. See, *e.g.*, 2 Howard C. Eglit, Age Discrimination § 7:27 (2d ed. May 2023 Update) ("for causation to exist the adverse employment action must follow the plaintiff's exercise of his protected activity"). Second, aside from a conclusory statement that the "retaliation was because Stachler had requested, attempted to request, used, or attempted to use a reasonable accommodation as allowed by the [Illinois Human Rights Act]," there are no allegations that the Board refused or ignored Stachler's accommodations requests simply because she made the requests or attempted to use an accommodation. If this were sufficient to plead causation, then an employee who made an accommodation request would be able to allege a *prima facie* case for retaliation any time an employer denied that request. It was not enough for Stachler to plead that her accommodations requests were denied; she needed to plead the reasons for the denial, and she failed to do so.

¶ 33    Stachler's complaints about a retaliatory disciplinary meeting and performance improvement plan likewise fail. There is a wealth of federal case law that concludes that a performance improvement plan, without more, is insufficient to constitute a material adverse act. See, *e.g.*, *Lauth v. Covance, Inc.*, 863 F.3d 708, 717 (7th Cir. 2017) (finding that placement on a performance improvement plan without more was not an adverse act); *Davis v. Time Waner Cable of Southeastern Wisconsin, L.P.*, 651 F.3d 664, 677 (7th Cir. 2011) (same); *Payan v. United Parcel Service*, 905 F.3d 1162, 1173-74 (10th Cir. 2018) (same); *Fiero v. CSG Systems, Inc.*, 759 F.3d 874, 880 n.2 (8th Cir. 2014) (same); *Hilliary v. FlightSafety International, Inc.*, 778 F. App'x 835, 841 (11th Cir. 2019) (*per curiam*) (same); *Choulagh v. Holder*, 528 F. App'x 432, 438 (6th Cir. 2013) (same). However, the case most closely on point is *Fields v. Board of Education of Chicago*, 928 F.3d 622 (7th Cir. 2019) (*per curiam*). There, Fields, a Chicago public school teacher, was

placed on a performance improvement plan under which, as here, "[w]hen Fields accrued three performance improvement plans, she faced possible disciplinary action." *Id.* at 624. The court determined that this plan was insufficient to show a material adverse act "even though [it] had the *potential* to lead to termination or other discipline." (Emphasis in original.) *Id.* at 626.

¶ 34    We see no reason to depart from these decisions. This court often looks to analogous federal law for guidance. See, *e.g.*, *Trayling v. Board of Fire & Police Commissioners of Bensenville*, 273 Ill. App. 3d 1, 10 (1995); *Robinson v. Village of Oak Park*, 2013 IL App (1st) 121220, ¶ 19. And the standard for retaliation under the Illinois Human Rights Act is identical to the standard for retaliation under Title VII of the Civil Rights Act of 1964, as amended (42 U.S.C. § 2000e *et seq.* (2018)). See *Hoffelt*, 367 Ill. App. 3d at 634-36. Moreover, Fields and Stachler were both subject to the same disciplinary procedures. Aside from the courts the claims were brought in, the two cases are virtually indistinguishable. Additionally, even if the federal circuits had not spoken on the issue, Stachler's claims would still be unavailing. The Illinois Human Rights Act prohibits "employer actions that are *likely* to deter victims of discrimination from complaining." (Emphasis added and internal quotation marks omitted.) *Burlington*, 548 U.S. at 68. The pre-disciplinary meeting and performance improvement plan here would not be likely to deter discrimination complaints in a reasonable employee. Stachler suffered "quantitative or qualitative change" in her employment. See *Madlock v. WEC Energy Group, Inc.*, 885 F.3d 465, 470 (7th Cir. 2018) (quoting *Johnson v. Cambridge Industries, Inc.*, 325 F.3d 892, 901 (7th Cir. 2003)). Had she not taken a leave of absence, she would have been subject to the same employment expectations that she had always had. The Board did not reduce her pay, hours, or benefits. She was still entitled to a private

room for lactation and any necessary breaks. In short, nothing changed for Stachler; thus, these are not material adverse actions.

¶ 35                                    E. Harassment

¶ 36     Stachler further argues that the same actions that constituted retaliation against her also created a hostile and intimidating work environment that interfered with her ability to do her job. The standard for a hostile work environment under the Illinois Human Rights Act is the same as the standard under Title VII: a plaintiff must show that "(1) the work environment was both objectively and subjectively offensive; (2) the harassment was based on membership in a protected class or in retaliation for protected behavior; (3) the conduct was severe or pervasive; and (4) there is a basis for employer liability." *Mahran v. Advocate Christ Medical Center*, 12 F.4th 708, 714 (7th Cir. 2021) (quoting *Abrego v. Wilkie*, 907 F.3d 1004, 1015 (7th Cir. 2018)). Factors for determining whether harassment is severe or pervasive include "the frequency of improper conduct, its severity, whether it is physically threatening or humiliating (as opposed to a mere offensive utterance), and whether it unreasonably interferes with the employee's work performance." *Id.* at 715.

¶ 37     First, because plaintiff failed to plead a claim for retaliation, she cannot satisfy the standard for harassment. However, even if it were retaliatory, Stachler's harassment claim would still fail. It is clear that Stachler subjectively believed that her work environment was subjectively offensive. She explained in her letter upon taking a leave of absence that she was "experiencing stress & anxiety" because she feared "that any little thing [she did], accidentally or intentionally, could be considered insubordination."

¶ 38    However, Stachler's work environment was not objectively so offensive as to "create an abusive working environment." *Abrego*, 907 F.3d at 1015. Stachler was afforded regular breaks during which she could express breast milk, and she was provided with a room at each school in which to do so. Also, whenever she submitted a request, Stachler was permitted to work remotely. The only offensive conduct was the allegedly pretextual disciplinary meeting and subsequent performance improvement plan described above. However, these actions are insufficient to create an objectively offensive workplace. Stachler's punishment was a warning. This warning did not result in any "change in the daily conditions of employment." (Internal quotation marks omitted.) *Hoffelt*, 367 Ill. App. 3d at 633. It was not "physically threatening or humiliating." *Mahran*, 12 F.4th at 715. The warning occurred only once, so this sort of reprimanding was not frequent. We cannot say that "material harm has resulted from *** the challenged actions." (Internal quotation marks omitted.) *Hoffelt*, 367 Ill. App. 3d at 633. Thus, the trial court did not err in dismissing Stachler's harassment claim.

¶ 39                                    F. Forced Leave

¶ 40    The Illinois Human Rights Act also provides a cause of action when an employer requires an employee "to take leave under any leave law or policy of the employer if another reasonable accommodation can be provided to the known medical or common conditions related to the pregnancy or childbirth of an employee." 775 ILCS 5/2-102(J)(4) (West 2022). Here, Stachler took an unpaid leave of absence following a disciplinary hearing and the rejection of her accommodations requests. She argues that, although she chose to take leave, it was only because "it was clear at that point that the Board was not going to consider any of her requested accommodations; that she could not continue both lactating and working without receiving some

accommodation; and that she was going to be subject to ongoing discipline if she tried to find workable accommodations on her own." However, no one ever told Stachler that she was required to take leave or even suggested that she take leave. Instead, Stachler argues that she was constructively required to take leave. The issue here is whether a constructive imposition of medical leave qualifies as required leave within the meaning of the act. We find that it does; however, Stachler cannot show such an imposition.

¶ 41 This court has recognized that employees can be constructively discharged from their employment—that is, where "an employee's working conditions are made so intolerable by the employer that the employee, acting as a reasonable person, is compelled to resign." *Motley v. Human Rights Comm'n*, 263 Ill. App. 3d 367, 373 (1994). An employee may experience similar working conditions that essentially force her to take a leave of absence. This must qualify as a violation within the meaning of the statute. To hold otherwise would be to suggest that employers can create unbearable workplaces for their employees and avoid liability when the employees elect to take leave rather than endure the conditions. Such a reading of the act would be untenable.

¶ 42 However, the standard for determining whether an employer has imposed a constructive leave, as with constructive discharge, must be a high bar. This is because "[i]n the course of most, if not all, people's employment, a wide variety of disappointments, and possibly some injustices, occur." *Id.* But it cannot be that every disappointment or even injustice faced by employees is sufficient to create a constructive imposition of leave. Instead, the focus must be on "whether a reasonable person in plaintiff's position would feel compelled to leave her job." *Id.* This is an objective standard. A plaintiff who is especially sensitive is not provided greater protection. This is also a higher standard than the standard to establish a hostile workplace. Rather than simply

altering "the conditions of employment" and creating "an abusive work environment," to establish a constructive imposition of medical leave, an employee must show that the conditions were "so onerous or demeaning the employee has effectively been *** compelled to leave." *Id.* at 374 (quoting *Saxton v. American Telephone & Telegraph Co.*, 785 F. Supp. 760, 765 (N.D. Ill. 1992)). Here, Stachler has failed to satisfy the standard for a hostile work environment let alone the standard for a constructive imposition of medical leave.

¶ 43                    G. Denial of Additional Training Time

¶ 44    Finally, Stachler argues that the trial court erred by dismissing her claim for the denial of additional time for training before returning to in-person work. Specifically, she argues that the trial court analyzed the denial of training time as retaliation, where Stachler maintains that the issue should have been analyzed as the denial of an employment opportunity. The Illinois Human Rights Act provides a cause of action when an employer denies "employment opportunities or benefits" to employees "if the denial or adverse action is based on the need of the employer to make reasonable accommodations" related to pregnancy or childbirth. 775 ILCS 5/2-102(J)(2) (West 2022). However, even assuming for the sake of argument that training time is an employment opportunity under the act, Stachler failed to plead facts from which a reasonable jury could conclude that the denial of training time was based on her need for reasonable accommodations. Stachler did not request lactation accommodations until after she had been assigned the training and been given a shorter amount of time to complete the training tasks than others. The Board cannot have preemptively denied Stachler an employment opportunity based on the need to make reasonable accommodations that the Board did not yet know that it needed to make. Therefore, the trial court did not err in dismissing this claim.

¶ 45                                    III. CONCLUSION

¶ 46    For the foregoing reasons, we affirm the judgment of the circuit court of Cook County.

¶ 47    Affirmed.

***Stachler v. Board of Education of Chicago***, 2023 IL App (1st) 221092

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 21-L-10663; the Hon. Daniel J. Kubasiak, Judge, presiding. |
| **Attorneys for Appellant:** | Robert E. Bloch and Josiah A. Groff, of Dowd, Bloch, Bennett, Cervone, Auerbach & Yokich, LLP, of Chicago, for appellant. |
| **Attorneys for Appellee:** | Ruchi Verma and Thomas A. Doyle, of Board of Education of the City of Chicago, of Chicago, for appellee. |
| *Amicus curiae*: | Ameri R. Klafeta and Emily Werth, of Roger Baldwin Foundation of ACLU, Inc., and Nicholas J. Siciliano, Marissa K. Perry, Renatta A. Gorski, Gwendolyn S. Gissendanner, and Alexandra B. van Doren, of Latham & Watkins LLP, both of Chicago, and Elizabeth C. Morris, of Center for WorkLife Law of UC Hastings College of the Law, of San Francisco, California, for *amici curiae* American Civil Liberties Union of Illinois *et al.* |
| | J. Bryan Wood, of Wood Law Office, LLC, and Randall D. Schmidt, of Edwin F. Mandel Legal Aid Clinic of the University of Chicago Law School, both of Chicago, *amici curiae* NELA/Illinois *et al.* |