2024 IL App (1st) 240080-U

No. 1-24-0080

Order filed December 6, 2024

Sixth Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| BILLY TORAIN, | ) | Petition for Direct Review of an |
| | ) | Order of the Illinois Human |
| Petitioner-Appellant, | ) | Rights Commission |
| | ) | |
| v. | ) | Charge No. 2022 CF 0224 |
| | ) | |
| ILLINOIS HUMAN RIGHTS COMMISSION, ILLINOIS | ) | |
| DEPARTMENT OF HUMAN RIGHTS, and LEAVE NO | ) | |
| VETERAN BEHIND, | ) | |
| | ) | |
| Respondents-Appellees. | ) | |

JUSTICE HYMAN delivered the judgment of the court.
Justices Walker and Gamrath concurred in the judgment.

**ORDER**

¶ 1    *Held*:  The Illinois Human Rights Commission did not abuse its discretion in sustaining the dismissal of petitioner's charge against his employer raising counts of harassment and failure to rehire him based on his sex and in retaliation for filing a discrimination charge.

¶ 2    Petitioner Billy Torain filed a discrimination charge with the Illinois Department of Human

Rights, alleging that his former employer, Leave No Veteran Behind (LNVB), subjected him to

harassment and failed to rehire him based on his sex (male) and in retaliation for engaging in a protected activity. The Department dismissed the charge for lack of substantial evidence. Torain requested a review with the Illinois Human Rights Commission, which sustained the finding. Torain, representing himself, filed a direct appeal with this court. We have carefully reviewed each ground for reversal and affirm. We review the decision of the Commission, not the Department, and hold that the Commission's final order dismissing for lack of substantial evidence is correct on all claims.

¶ 3                                    Background

¶ 4     LNVB, a not-for-profit charity, hired Torain on a contractual basis in December 2019. Then, in September 2020, LNVB rehired Torain for LNVB's "Safe Passage" program, which places adults near routes to Chicago Public Schools to enhance student safety while thy travel to and from school. On August 29, 2021, LNVB did not rehire or invite Torain to return to the program. In total, Torain had two employment contracts with LNVB.

¶ 5                          Charge against the Department

¶ 6     Torain filed a charge against the Department, alleging that LNVB subjected him to harassment and failed to rehire him based on his sex and in retaliation for having engaged in a protected activity. The Department investigated Torain's charge and prepared a report. As part of its investigation, the Department examined witnesses, including Torai; Ruth Thomas, LNVB senior project manager; Phyllis Reynolds, LNVB project manager; Millicent Johnson, LNVB team lead; and Eli Williamson, LNVB co-founder and board president.

¶ 7     During the Department's investigation, Torain stated that his immediate supervisor was Johnson and he reported his attendance to Reynolds. On November 30, 2020, Torain was promoted

to team lead in the Safe Passage program but was demoted back to worker on January 25, 2021, for alleged poor work performance.

¶ 8    Torain claimed that from late May to June 22, 2021, Johnson harassed him daily by making negative comments in front of the team that he believed referred to him, such as "If you do not like it here, leave." Torain acknowledged that the comments were about work performance and not about his sex. He contended he was reassigned to new work locations on May 14 and 21, 2021, as a form of harassment.

¶ 9    Torain alleged harassment in retaliation for engaging in a protected activity where he had filed a charge with the Department (charge number 2021 CF 1405) on February 16, 2021, asserting harassment from January 2021 through May 2021. Torain emailed an internal complaint on May 12, 2021, to Johnson, Thomas, and Reynolds about Johnson's harassment on that date. Torain also filed an internal complaint on May 22, 2021. He maintained that the harassment closely followed his engagement in the protected activity of filing the complaints and raised the inference of retaliation.

¶ 10    According to Torain, on June 22, 2021, Thomas directed Reynolds to "catch [Torain] doing something." Reynolds informed Johnson that she saw a worker eating while on duty at a location where Torain was assigned. Reynolds instructed Johnson to discipline the worker. Torain indicated that Johnson did not take adverse actions toward him. Still, she brought up the incident in a "mocking way" at the team briefing that afternoon. Torain maintained that the conduct created a hostile work environment and interfered with his ability to perform his job. On June 28, 2021, Torain emailed Williamson a harassment complaint against Reynolds, reflecting that Reynolds directed Johnson to discipline him as a form of continued harassment and retaliation for

complaining about harassment. Torain stated that after complaining to LNVB, no action was taken to stop Johnson's harassment.

¶ 11    Torain alleged that LNVB's failure to rehire him as a Safe Passage worker was due to his sex, noting that less qualified female workers were hired instead. On August 30, 2021, LNVB rehired three females and three males. He also alleged that he was as qualified as them. He also alleged that he was not rehired in retaliation for engaging in protected activities on February 16, 2021, and May 4, 2021, when he raised discrimination with the Department and internally.

¶ 12    Johnson informed the Department that she directed her remarks to the entire staff in attendance, not at Torain. Johnson recounted an incident on January 19, 2021, when Torain was assigned to hang plastic bags containing personal protective equipment (PPE) on the door handles of individual apartments and condominium units. Instead, he handed the PPE bags to building managers to distribute to tenants. He also failed to confirm that the property managers distributed the PPE bags correctly. As a result, Torain received a two-day suspension. When Torain returned to work, he was given a new assignment due to his regularly assigned school having no work for him. The new assignment had a team lead, so Torain was assigned as a "regular" Safe Passage worker.

¶ 13    Johnson also stated that on June 22, 2021, she learned that Torain may have been eating at his post. But because Johnson knew how Torain worked, she immediately denied that Torain was doing so and took no action. During a team meeting, she mentioned the "concern" by reiterating LNVB's policy against eating while working.

¶ 14    Thomas recounted that on April 29, 2021, a female coworker complained that Torain was hostile towards her, and she refused to work with him again. Also, Torain was not rehired because

of his poor job performance and his conduct towards his female colleague, and not in retaliation for his complaints. Thomas denied that Torain's sex was a factor, as indicated by the other males who continued as Safe Passage workers.

¶ 15    Williamson asserted that the decision not to rehire Torain centered on "the tension [Torain] created with his team members." In addition to the April 29, 2021, complaint against Torain by his female coworker, other employees "made it clear" that Torain "took an aggressive posture toward women members on the job and sowed discontent between females and males."

¶ 16    The Department investigator recommended a finding of lack of substantial evidence on all counts.

¶ 17    Regarding the harassment counts based on Torain's sex and in retaliation for his engaging in a protected activity, the investigator found no *prima facie* case for harassment as Torain was unable to establish "a pattern of incidents so severe or pervasive that it constituted a different term and condition of employment based on a discriminatory factor." The investigator stated that the alleged conduct "may have been offensive" to Torain but did not amount to actionable harassment.

¶ 18    Concerning Torain's allegations that LNVB failed to rehire him based on his sex and in retaliation for his engaging in a protected activity, the investigator found no substantial evidence of either claim. The investigator noted that LNVB rehired males and females and had a legitimate reason for not rehiring Torain—his performance in January 2021 and his negative behavior towards the female coworker. The investigator stated that employees who engage in protected activities must follow the same standards of conduct as other employees, and LNVB had articulated its reasons for not rehiring Torain.

¶ 19    On August 28, 2023, the Department accepted the investigator's recommendations and dismissed Torain's charge for lack of substantial evidence.

¶ 20                                Commission Review

¶ 21    The Commission issued a final order sustaining the dismissal for lack of substantial evidence. Regarding the claims of harassment based on his sex, the Commission found that Torain failed to establish that the aggrieved actions were severe or pervasive harassment, "let alone that they were undertaken because of his sex."

¶ 22    Regarding his harassment claim premised on retaliation for engaging in a protected activity, the Commission found that the protected activity of filing a charge on February 16, 2021, and an internal complaint on May 12, 2021, and the asserted acts of harassment from May 13, 2021, through June 22, 2021, were close enough in time to create an inference of connectedness, but Torain did not establish that the aggrieved retaliatory action meet the standard for severe or pervasive harassment.

¶ 23    Regarding the failure to rehire based on his sex, the Commission found that Torain provided no evidence that the position remained open after he was not rehired, LNVB sought to fill the position with a female applicant, or that a female filled the position. The Commission also found that LNVB gave legitimate, nondiscriminatory reasons, namely, Torain's failure to follow his supervisor's directions in January 2021 regarding the distribution of PPE and his treatment of a female coworker. Further, Torain did not establish that LNVB's reasons were pretextual.

¶ 24    Given the short time between Torain's internal harassment complaint on May 12, 2021, and the decision not to rehire him in August 2021, the Commission found LNVB articulated legitimate, non-pretextual reasons for its decision not to rehire, which Torain could not refute.

Accordingly, Commission dismissed the claim for lack of substantial evidence. The Commission stated that Torain referenced alleged acts from before May 12, 2021, but those allegations were not included in the current charge, so couldn't be considered. Further, Torain asserted his female coworker's complaint was a lie. The Commission held that the result would not change because Torain failed to establish that LNVB's reliance on the coworker's complaint was other than made in good faith.

¶ 25    Torain timely filed a *pro se* petition in this court for direct administrative review. See 775 ILCS 5/8-111(B)(1) (West 2020); Ill. S. Ct. R. 335(a) (eff. July 1, 2017).

¶ 26                                    Analysis

¶ 27    Torain seeks reversal of the Commission's decision sustaining the dismissal of his charge.

¶ 28    The Illinois Human Rights Act (Act) (775 ILCS 5/1-101 *et seq.* (West 2020)) deems it a civil rights violation for an employer "to refuse to hire, *** to engage in harassment *** or to act with respect to *** hiring, *** renewal of employment, *** or conditions of employment on the basis of unlawful discrimination" premised, *inter alia*, on a person's sex. 775 ILCS 5/1-102(A), 2-102(A) (West 2020). Also a civil rights violation is retaliation against a person because the person "reported conduct that the person reasonably and in good faith believes" to be unlawful discrimination or "made a charge, filed a complaint, *** or participated in an investigation, proceeding, or hearing" under the Act. 775 ILCS 5/6-101(A) (West 2020).

¶ 29    After the filing of a charge under the Act, the Department investigates the allegations and may dismiss the charge when no "substantial evidence" supports the charge. 775 ILCS 5/7A-102(C), (D)(3) (West 2020). "[S]ubstantial evidence" refers to "evidence which a reasonable mind accepts as sufficient to support a particular conclusion and which consists of more than a mere

scintilla but may be somewhat less than a preponderance." 775 ILCS 5/7A-102(D)(2) (West 2020). "[M]ere speculation and conjecture does not constitute substantial evidence." *Folbert v. Department of Human Rights*, 303 Ill. App. 3d 13, 25 (1999). After a dismissal, the complainant may request the Commission's review. 775 ILCS 5/7A-102(D)(3) (West 2020). If the Commission sustains the dismissal, the complainant may seek a direct review in this court. 775 ILCS 5/8-111(B)(1) (West 2020).

¶ 30    We review the decision of the Commission, not the Department. See *Zaderaka v. Illinois Human Rights Comm'n*, 131 Ill. 2d 172, 180 (1989). The parties disagree on our standard of review, but well-settled case law establishes abuse of discretion as the standard. *Young v. Illinois Human Rights Comm'n*, 2012 IL App (1st) 112204, ¶¶ 31-32. We will reverse only where the Commission's decision was arbitrary or capricious. *Owens v. Department of Human Rights*, 403 Ill. App. 3d 899, 917 (2010). To be arbitrary or capricious the decision must "contravene[] legislative intent, fail[] to consider a critical aspect of the matter, or offer an explanation so implausible that it cannot be considered as the result of an exercise of the agency's expertise." *Young*, 2012 IL App (1st) 112204, ¶ 33.

¶ 31    Illinois courts have adopted the three-part test in actions raising civil rights violations. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). Under this test, the petitioner must first establish by a preponderance of the evidence a *prima facie* case of unlawful discrimination. *Zaderaka,* 131 Ill. 2d at 79-80. If established, a rebuttable presumption arises that the employer unlawfully discriminated against the petitioner. *Id.* at 178-79. The employer must rebut the presumption by articulating, not proving, a legitimate, nondiscriminatory reason for its decision. *Id.* at 179.

¶ 32    If the employer articulates a legitimate reason, the petitioner must then prove, by a preponderance of the evidence, that the employer's reason was untrue and a pretext for discrimination. *Id.* "Pretext involves more than just faulty reasoning or mistaken judgment on the part of the employer." *Lau v. Abbott Laboratories*, 2019 IL App (2d) 180456, ¶ 55. The burden of persuasion remains on the petitioner throughout the proceeding. *Zaderaka,* 131 Ill. 2d at 179.

¶ 33                                             Harassment

¶ 34    For a claim of harassment to be actionable, the aggrieved employee must present evidence that the employer's behavior was (i) both objectively and subjectively offensive; (ii) based on membership in a protected class or in retaliation for protected behavior; (iii) severe or pervasive; and (iv) a basis for employer liability. *Stachler v. Board of Education of City of Chicago*, 2023 IL App (1st) 221092, ¶ 36. In determining whether the employer's conduct was subjectively hostile or abusive, courts consider " 'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.' " *Cook County Sheriff's Office v. Cook County Comm'n on Human Rights*, 2016 IL App (1st) 150718, ¶ 32. (quoting *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 22-23 (1993)). "[T]he mere utterance of an *** epithet which engenders offensive feelings is insufficient to constitute harassment." (Internal quotation marks omitted.) *Id.*

¶ 35    To have probative value, the harassment must be related to the complainant's protected class. See *Sola v. Illinois Human Rights Comm'n*, 316 Ill. App. 3d 528, 542 (2000).

¶ 36    Retaliation occurs when an employer retaliates against a person because that person has "made a charge, filed a complaint, testified, assisted, or participated in an investigation, proceeding, or hearing" under the Act. 775 ILCS 5/6-101(A) (West 2020). For a *prima facie* case

of retaliation, the complainant must establish that (i) the petitioner engaged in a protected activity, (ii) the employer committed an adverse act against the petitioner, and (iii) a causal connection existed between the protected activity and the adverse act. *Stone v. Department of Human Rights*, 299 Ill. App. 3d 306, 315 (1998). The petitioner bears the burden of showing, under an objective standard, that "a reasonable employee would have found the challenged action materially adverse." *Hoffelt v. Illinois Department of Human Rights*, 367 Ill. App. 3d 628, 635 (2006).

¶ 37    Torain alleged he suffered harassment where (i) Johnson made disparaging remarks during team meetings that he believed were directed at him, (ii) Thomas instructed Johnson to discipline him for eating at his post, (iii) his work location was reassigned, and (iv) LNVB failed to investigate his harassment complaints internally. But, Johnson explained that her remarks were directed at all employees, which Torain acknowledged. Torain also acknowledged he was never disciplined for eating on the job. Moreover, none of the statements Torain cited as harassment referred to his sex or were directed only toward male employees. And, no evidence indicates that Train was unable to work, physically threatened, or humiliated by actions of LNVB.

¶ 38    Torain argues that he raised additional instances of harassment committed by LNVB from April 15, 2021, through May 12, 2021, which he believes the Commission should have considered. But, the Commission's review cannot go beyond the allegations in the charge. *Deen v. Lustig*, 337 Ill. App. 3d 294, 306 (2003). Thus, the Commission properly limited its review to LNVB's alleged discriminatory conduct described in Torain's charge. (The record reflects that Torain's earlier discrimination charge (2021CF1405) alleged harassing conduct from January 2021 to May 12, 2021.) In summary, as Torain failed to establish a *prima facie* case of harassment, the Commission

did not abuse its discretion in upholding the dismissal of his harassment counts for lack of substantial evidence.

¶ 39                                    Employment Discrimination

¶ 40    Torain argues that the Commission erred in sustaining the dismissal of his allegations that LNVB failed to rehire him based on his sex and in retaliation for engaging in a protected activity.

¶ 41    For a *prima facie* case on employment discrimination, the complainant must show (i) membership in a protected class; (ii) having applied and qualified for a job for which the employer was seeking applicants; (iii) rejection despite qualifications; and (iv) after being rejected, the position remained open, and the employer sought other applicants with similar qualifications. See *Stone*, 299 Ill. App. 3d at 315. An employer is not required to hire an applicant because they belong to a protected class if the applicant is equally or less qualified than those hired. *Id.*

¶ 42    Here, the Commission did not abuse its discretion. Specifically, Torain failed to establish that (i) his position remained open after he was not rehired, (ii) LNVB sought to fill his position with a female employee, or (iii) LNVB hired a less qualified female to fill his position. Torain also noted that LNVB rehired three male and three female workers for the Safe Passage program, and he was equally qualified as them.

¶ 43    There is no dispute that Torain engaged in protected activity when he filed his initial complaint with the Department in February 2021 and made an internal harassment complaint in May 2021. Soon after that, in August 2021, LNVB did not rehire him. These events were sufficiently close in time to infer a causal connection between Torain engaging in the protected activity and LNVB's decision not to rehire him. See *Hoffelt*, 367 Ill. App. 3d at 638 ("A *prima*

*facie* case of retaliatory discharge can be established by showing a short time span between the filing of a discrimination charge and the employer's adverse action.").

¶ 44    Nevertheless, LNVB articulated legitimate, nondiscriminatory, and nonretaliatory reasons for its decision not to rehire Torain, citing his work performance and conduct. In January 2021, Torain did not follow his instructions regarding the distribution of PPE. In April 2021, a female coworker complained to LNVB that Torain had harassed her. Additional coworkers later reported that Torain was difficult to work with and caused discord between male and female workers. Torain failed to demonstrate, nor did the Department's investigation reveal, that LNVB's reasons for not rehiring him were pretextual.

¶ 45                                 Due Process Rights

¶ 46    Next, Torain asserts that his due process rights were violated because the Commission ignored the third prong of the *McDonell Douglas* test when it denied him the opportunity to prove pretext. Our review of the Commission's decision and the record shows that neither the Commission nor the Department denied Torain an opportunity to prove pretext.

¶ 47    Torain argues that Williamson and Thomas provided contradicting statements regarding the decision not to rehire him. While Williamson attributed the decision to tension Torain created with coworkers, Thomas stated it was based on Torain's job performance. Both explanations establish that Torain was not rehired due to his job-related conduct, though for different reasons.

¶ 48                            Female Coworker's Complaint

¶ 49    Additionally, Torain claims that his female coworker complaint was fabricated and contradicted by evidence in the record. Even if the coworker's complaint is untrue, Torain did not demonstrate that LNVB was aware of its falsity, thus failing to show that LNVB's articulated

reasons for not rehiring him were pretextual, and that the decision was made in bad faith. See *Young*, 2012 IL App (1st) 112204, ¶ 48 ("Under the Act, the unfairness or unreasonableness of an employer's conduct is irrelevant, so long as it was not motivated by an employee's protected characteristic."). The Commission did not abuse its discretion in sustaining the dismissal for lack of substantial evidence of the retaliation count.

¶ 50 Torain argues that the Commission's order is void *ab initio* because the Department improperly made credibility findings when reviewing the evidence. He also argues that the Commission erred in not reviewing his counts of harassment and failure to rehire based on race (black). But, Torain did not raise credibility before the Commission, and the Commission correctly stated that race-based allegations were not included in his charge. In a footnote in its final order, the Commission noted that Torain asked the Department to investigate race-based claims. The Commission determined that the Department lacked jurisdiction because the claims were not included in the charge. We cannot consider those claims for the first time on appeal. See *Demsa v. Adams*, 2013 IL App (1st) 122608, ¶ 52 ("It is well settled that on administrative review a party forfeits any issue that it failed to raise in proceedings before the administrative agency.").

¶ 51                                    Motion to Supplement Record

¶ 52 Lastly, although we already denied Torain's motion to supplement the record (*Torain v. Illinois Human Rights Comm'n*, No. 1-24-0080 (Mar. 22, 2024) (dispositional order)), Torain's briefs reference those same documents, and he included them in an appendix to his reply brief. By statute, we are prohibited from considering facts and evidence not presented to the Commission. See 735 ILCS 5/3-110 (West 2020).

¶ 53 Affirmed.